# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-KA-00650-SCT

*LARRY GATLIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/04/95 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PATSY ANN BUSH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/10/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/31/98 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case is appealed unto this Court from the Lincoln County Circuit Court where Larry Gatlin was indicted by a grand jury of six counts of wire fraud in violation of Miss. Code Ann. § 97-19-83. Prior to trial Gatlin filed a motion to quash the indictment for failure to state facts sufficient to constitute a crime. The trial judge entered an order taking the motion under advisement.

¶2. Gatlin was convicted by a jury of all six counts of wire fraud. He was sentenced to serve in the Mississippi Department of Corrections for a term of five years on Counts 1, 2, and 3 to run concurrently, and five years on Counts 4, 5, and 6 to run concurrently. Counts 1, 2, and 3 were to run consecutively to Counts 4, 5, and 6, with the last four years suspended for five years probation. Also, Gatlin was ordered to pay court costs, attorney fees, $1000 as to Count 1, and $1000 as to Count 4.

¶3. After receiving the verdict and sentence, Gatlin filed a motion for j.n.o.v. which was denied. His motion

for a new trial was also denied. Aggrieved by the lower court's decisions Gatlin perfected his appeal unto this Court asking for a reversal and dismissal of the indictment against him, or at the very least a remand for imposition of a lesser sentence. He appeals raising the following issues:

**I. WHETHER THE TRIAL COURT ERRED IN FAILING TO QUASH ALL SIX COUNTS OF THE INDICTMENT RETURNED AGAINST GATLIN WHERE THE COUNTS DID NOT ALLEGE OWNERSHIP RIGHTS OF MONEY WHICH WAS THE SUBJECT OF THE ALLEGATIONS OF FRAUD.**

**II. WHETHER THE TRIAL COURT ERRED IN DENYING GATLIN'S RENEWED MOTION TO QUASH THE INDICTMENT FOR FAILURE TO PROVE THAT THE DEA HAD POSSESSION, CUSTODY, CONTROL OR ANY OWNERSHIP RIGHTS WHATSOEVER OF ALLEGED DRUG MONEY; OR ALTERNATIVELY, WHETHER THE TRIAL COURT ERRED IN DENYING GATLIN'S MOTION FOR DIRECTED VERDICT WHEN THE STATE FAILED TO PROVE THAT THE DEA HAD POSSESSION, CUSTODY, CONTROL, OR ANY OWNERSHIP RIGHTS WHATSOEVER IN THE ALLEGED DRUG MONEY.**

**III. WHETHER THE TRIAL COURT ERRED BY ALLOWING INTO EVIDENCE UNAUTHENTICATED TELEPHONE CALLS AND DOCUMENTS ALLEGED TO HAVE BEEN MADE AND MAILED BY GATLIN.**

**IV. WHETHER THE SENTENCE PRONOUNCED AGAINST GATLIN WAS CONSTITUTIONALLY DISPROPORTIONATE TO OTHERS SIMILARLY SITUATED.**

¶4. The lower court was correct, did not commit reversible error, and Gatlin's claims on appeal are without merit. Accordingly, the lower court's decision is affirmed.

## STATEMENT OF THE FACTS

¶5. On February 3, 1994, Phyllis Wilson and Felicia Beasley purchased two round-trip airplane tickets at the ticket counter of the New Orleans, Louisiana airport to Los Angeles, California and planned to return the following day. The two had been brought to New Orleans by Anthony Snell, who was Wilson's boyfriend and Gatlin's nephew. Wilson, Beasley, and Snell all lived in Brookhaven, Mississippi. Snell had instructed Wilson to take a sum of money to Los Angeles, stay at a particular hotel, and wait for a contact person to come and take the money from her.

¶6. Acting on a tip from a concerned citizen, Keith Simone and another officer with the narcotics unit of the Jefferson Parish Sheriff's Office approached Wilson and Beasley. The two officers worked in conjunction with the Drug Enforcement Agency as part of a narcotics interdiction task force.

¶7. When questioned separately by the officers, the women gave conflicting stories as to the purpose of their trip to Los Angeles. The women also appeared very nervous while being questioned by the officers. The two women consented to having their luggage searched. A Crown Royal bag with $19,000 was found in Wilson's luggage. Simone did not believe Wilson's explanation and suspected the large amount of cash was narcotics related. A narcotics detective along with a drug dog was called, and the dog alerted to the cash. Simone testified that a dog alerts to something when it is contaminated with the scent of drugs.

¶8. Simone informed the women that the money was going to be seized by the officers. He then issued to Wilson a receipt for the money which was seized. The receipt was a form that contained the time and date of the seizure, the denomination of the currency, and the person to contact in order to retrieve the seized money. The contact person was Captain Kenny Gaillot, an employee of the Jefferson Parish Sheriff's Department who was assigned to the DEA in Metarie, Louisiana. Simone took the money to the First National Bank of Commerce to obtain a cashier's check made payable to the United States Marshall Service and turned the money over to Gaillot.

¶9. Gaillot reviews cases to determine if there is probable cause for forfeiture and then to go forward with the appropriate proceedings. If the money is over $5,000 with no arrest for a drug related offense, but there is suspicion that the money is proceeds from drug trafficking, the forfeiture proceeding is handled by the Department of Justice.

¶10. At trial, Gaillot stated that as part of the forfeiture proceedings the Department of Justice sends out notices by registered mail and publishes notices of forfeiture in the *USA Today* every Wednesday for three consecutive weeks prior to completion of the forfeiture.

¶11. Gaillot determined probable cause existed in the case of the $19,000 and instituted forfeiture proceedings. The money was handled as an administrative forfeiture by the DEA. Wilson received the registered letter informing her of the proceedings that had been instituted to forfeit the $19,000. She discussed the letter and the situation with Snell. This conversation took place in the presence of Gatlin. At the trial, Wilson testified that Snell did not want any part of the money, but Gatlin stated he was going to claim the money.

¶12. Gatlin lived in Brookhaven, Mississippi, and contacted Gaillot across jurisdictional lines by telephone and mail in making his claim for the forfeited money. Gatlin attempted to contact Gaillot on February 16, 1994, but Gaillot was unavailable. A note was left with a return telephone number that indicated the caller wished to discuss the forfeited $19,000. The caller was Gatlin. When Gaillot returned Gatlin's call, Gatlin stated the $19,000 was actually his. He informed Gaillot that he had earned the money working offshore, working at a detail shop, and in construction. Gatlin later told Gaillot that the money was to be delivered to California to help pay some of his mother's medical expenses as she was in a hospital and a portion was to be held for him by his sister.

¶13. In order to prove his claim to the money, Gatlin sent Gaillot his 1993 W-2 form, which revealed that Gatlin had a gross income of $15,288 and that $12,718 of that income was from unemployment compensation. Gaillot was not convinced that this was sufficient to prove Gatlin's claim to the money. Gaillot requested Gatlin sign a Social Security waiver form which would allow access to Gatlin's Social Security records to determine his earnings for the last ten years. Gatlin agreed to sign the waiver.

¶14. Gaillot mailed Gatlin the Social Security form to a post office box in Brookhaven, Mississippi. Gatlin completed the form and returned it, along with a handwritten letter, through the mail to Gaillot in New Orleans, Louisiana. The letter stated the alleged reasons why the money was being sent to Los Angeles.

¶15. Although he attempted to provide proof as to his claim for the $19,000, Gatlin was unable to convince the Department of Justice the money was his. The documentation did not support his claims. The final judgment forfeiting the $19,000 to the United States government was dated May 9, 1994.

¶16. As a result of his attempts to claim the money, Gatlin was indicted on six counts of wire and mail fraud pursuant to Miss. Code Ann. § 97-19-83. He was convicted and sentenced to serve a term of five years on Counts 1, 2, and 3 to run concurrently. He was sentenced to serve a term of five years on Counts 4, 5, and 6 to run concurrently. Counts 1, 2, and 3 were to run consecutively to Counts 4, 5, and 6 with the last four years suspended for five years probation. Gatlin was also ordered to pay a $1000 fine for Count 1 and $1000 fine for Count 4, along with attorney fees and court costs. Aggrieved from the decision of the lower court, Gatlin appealed to this Court.

## DISCUSSION OF THE ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN FAILING TO QUASH ALL SIX COUNTS OF THE INDICTMENT RETURNED AGAINST GATLIN WHERE THE COUNTS DID NOT ALLEGE OWNERSHIP RIGHTS OF MONEY WHICH WAS THE SUBJECT OF THE ALLEGATIONS OF FRAUD.**

**II. WHETHER THE TRIAL COURT ERRED IN DENYING GATLIN'S RENEWED MOTION TO QUASH THE INDICTMENT FOR FAILURE TO PROVE THAT THE DEA HAD POSSESSION, CUSTODY, CONTROL OR ANY OWNERSHIP RIGHTS WHATSOEVER OF ALLEGED DRUG MONEY; OR ALTERNATIVELY, WHETHER THE TRIAL COURT ERRED IN DENYING GATLIN'S MOTION FOR DIRECTED VERDICT WHEN THE STATE FAILED TO PROVE THAT THE DEA HAD POSSESSION, CUSTODY, CONTROL, OR ANY OWNERSHIP RIGHTS WHATSOEVER IN THE ALLEGED DRUG MONEY.**

¶17. Gatlin argues on appeal that the trial judge erred by denying both his motion to quash the indictment and his motion for directed verdict. This Court's standard of review regarding such ruling by a trial judge is well settled.

> In considering a motion for directed verdict, the reviewing court must consider evidence introduced in light most favorable to State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom; if there is sufficient evidence to support a guilty verdict, motion for directed verdict must be overruled. *Edwards v. State*, 615 So. 2d 590 (Miss. 1993). If the evidence presents an issue for determination by the jury, then the case must be submitted to the jury and will not be disturbed, if evidence and those inferences support the guilty verdict. *Jackson v. State*, 440 So. 2d 307 (Miss. 1983). In fact, evidence favorable to the defendant is disregarded during the consideration of whether to grant a motion for a directed verdict. *Bullock v. State*, 391 So. 2d 601 (Miss. 1980), *cert. denied*; *Noe v. State*, 616 So. 2d 298 (Miss. 1993). The standard of review in determining the correctness of a trial judge's ruling on a motion for directed verdict is essentially the same. *Roberson v. State*, 595 So. 2d 1310, 1320 (Miss. 1992).

*Yates v. State*, 685 So. 2d 715, 718 (Miss. 1996).

¶18. The issues before this Court concern whether Gatlin violated the provisions of Miss. Code Ann. § 97-19-83 (1994)[1] by engaging in activities that constituted mail and wire fraud. Gatlin argues on appeal that the trial judge erred in failing to quash the indictment on the ground that the indictment failed to allege that the DEA owned the money which Gatlin sought to obtain by means of a fraudulent scheme transmitted via

wire across jurisdictional lines.

¶19. A pretrial hearing was held on the issue of the sufficiency of the indictment. Gatlin argued that the indictment was deficient because it failed to allege any ownership rights by the DEA in the money. Using *McNally v. U.S.*, 483 U.S. 350 (1987), as authority to support his contentions, Gatlin claimed the money could not be defrauded from the custody of the DEA if it did not have property rights in the money. The judge took the motion under advisement, and the case proceeded to trial.

¶20. After opening statements were made, the judge entered a ruling on Gatlin's motion to quash the indictment.

THE COURT:

All right. I find that the fact that there was a potential claim, and the fact that the money was in the possession of the DEA, based on the suspicions that will be testified to or I understand will be testified about today, based on the opening statement, that there was a sufficient ownership claim to the money or colorable claim to the money to justify this Court overruling the motion to quash the indictment, based on the fact that ownership had not been established. The defendant has, I think it's the *McNally* case. . . .

. . . .

THE COURT:

And its progeny. The defendant has urged the *McNally* case and its progeny. And I find that that case is not applicable or those cases are not applicable to the case at bar in that there is a colorable claim for real money, possession of real money, and not just a claim to an intangible right. And the motion to quash will be overrruled.

¶21. *McNally* addressed the federal mail fraud statute, 18 U.S.C. § 1341, where the United States Supreme Court held that the statute was inapplicable to schemes that attempted to defraud citizenry of the intangible right of good government. *McNally*, 483 U.S. at 356. "[T]he words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes'. . . ." *Id.* at 358 (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). The Supreme Court stated "the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property." *Id.* at 359.

¶22. The State asserts that ownership is not an element to be proved under Miss. Code Ann. § 97-19-83. Thus, the State contends the trial judge was correct by denying Gatlin's motion to quash the indictment charging him with six counts of wire and mail fraud.

¶23. *McNally* held that the federal mail fraud statute was concerned with property rights rather than intangible rights. However, Gatlin uses this holding to support his contention that the money could not be defrauded from the DEA if it did not have ownership of the money. The State responds, without citation of authority, that proof of ownership is not an element to be proved under Miss. Code Ann. § 97-19-83.

¶24. While outright ownership may not need be proven, the person or entity that has been the victim of actions prohibited by Miss. Code Ann. § 97-19-83 should have a colorable claim to the property in

question. In the case where a seizure of money has taken place, the governmental agency has custody, which carries with it certain property rights to the money. Anyone claiming the money must prove that their interest or right to the money is greater than that of the government. If no one comes forward and proves their claim is superior to that of the government, the money is forfeited. It is the point where the final judgment is entered in the forfeiture proceeding that total ownership and all property rights are vested in the government. Prior to that point, the government merely has a claim to the property that can be defeated by a rightful owner.

¶25. When Gatlin came forward and contacted Gaillot claiming that the seized money belonged to him, he was attempting to defraud the government of its property interest in the money by using misrepresentations and false statements transmitted both telephonically and through the United States mail. The statute prohibits such conduct. "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money,. . .transmits or causes to be transmitted by mail [or] telephone,. . ., any writings,. . .sounds, data, or other matter across county or state jurisdictional lines, shall, upon conviction, be punished. . .." Miss. Code Ann. § 97-19-83 (1) (1994). Gatlin's actions clearly violated the statute. He attempted to defraud the government using misrepresentations transmitted across state jurisdictional lines in order to obtain the $19,000 in cash.

¶26. Gatlin's argument that ownership of the property in question must be proven is without merit, because a colorable claim to the property is all that is required by the statute. If one attempts to or succeeds in defeating another's claim to property by fraudulent means as per Miss. Code Ann. § 97-19-83, that person should be indicted and prosecuted according to the statutory provisions.

¶27. In the case sub judice, Gatlin attempted to obtain money that had been seized and against which forfeiture proceedings had been instituted. Although the seizure and institution of forfeiture proceedings alone did not give the government ownership, it did give it a claim to the money, which Gatlin attempted to defeat by means prohibited by Miss. Code Ann. § 97-19-83.

¶28. Gatlin argues that the DEA never had possession, custody, or control of the $19,000 cash because Gaillot received a cashier's check in the amount of $19,000 made out to the U.S. Marshal service. Gatlin claims that because the DEA did not have the cash it could not be defrauded of something it did not have. Gatlin bases his claim on *Scarabin v. Drug Enforcement Administration*, 966 F.2d 989 (5th Cir. 1992). There the Fifth Circuit found that the DEA never possessed or controlled the actual cash, the res at issue in the case. "Under the federal civil forfeiture statutes governing administrative forfeitures. . ., the proceeding is in rem against the property. Thus, like a court enteretaining an in rem action, the federal agency undertaking the administrative forfeiture proceeding must have physical control over the property to be forfeited." *Id.* at 993.

¶29. This case has no bearing on the case presently before this Court. First, *Scarabin* was an appeal from a DEA forfeiture proceeding. Because the DEA did not have in rem jurisdiction over the cash, the Fifth Circuit ruled that the forfeiture proceeding in that particular case never happened. Gatlin was convicted of six counts of mail fraud, which were completely and totally separate from the forfeiture proceedings. If Gatlin had wanted to contest the forfeiture of the $19,000 cash, the Circuit Court of Lincoln County would not have had jurisdiction. The proper forum for such a contest would have been in Louisiana. Second, in this case a cashier's check was delivered to Gaillot in the amount of $19,000. The DEA had control and possession of $19,000. It was this money that Gatlin attempted to obtain by fraudulent means prohibited by

Miss. Code Ann. § 97-19-83. Any argument that *Scarabin* is applicable to the case sub judice is without merit.

¶30. Next, Gatlin directs this Court's attention to its past decisions regarding false pretenses where the Court stated the indictment for taking property by false pretenses must state the name of the person or entity defrauded and that the proof must sustain such allegation. ***Bruce v. State***, 217 Miss. 368, 374, 64 So. 2d 332, 334 (1953). The State responds by stating the real issue is whether the indictment adequately informed Gatlin of the charges against him so that he could prepare a defense. The indictment stated in pertinent part:

> Larry Gatlin. . .knowingly and unlawfully did devise a scheme to unlawfully and fraudulently obtain $19,000 from the custody of the United States Drug Enforcement Administration, hereinafter referred to as DEA, an agency of the United States Government. The scheme and plan involved the said Larry Gatlin making false representations to Kenneth Gaillot, a Captain with the Jefferson Parish Sheriff's Office assigned to the DEA Asset Removal Group, concerning money which had come into the possession and control of the DEA by virtue of a seizure which occurred at the New Orleans International Airport on February 3, 1994.

¶31. This Court has held that an indictment sufficiently informs the defendant of the charges against him if it includes the seven items listed in Unif. Crim. R. Cir. Ct. Prac. 2.05[2]. ***Holloman v. State***, 656 So. 2d 1134, 1139 (Miss. 1995). The seven items of Unif. Crim. R. Cir. Ct. Prac. 2.05 are:

> (1.) The name of the accused;
>
> (2) The date on which the indictment was filed in each court;
>
> (3.) A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
>
> (4.) The county and judicial district in which the indictment is brought;
>
> (5.) The date and if applicable the time, on which the offense was alleged to be committed. Failure to state the correct date shall not render the indictment insufficient;
>
> (6.) The signature of the foreman of the grand jury issuing it; and
>
> (7.) The words "against the peace and dignity of the state."

Unif. Crim. R. Cir. Ct. Prac. 2.05.

¶32. "Rule 2.05 requires that the indictment provide 'a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him.'" ***Holloman***, 656 So. 2d at 1139; *See* ***State v. Hoffman***, 508 So. 2d 669, 671 (Miss. 1987). The indictment brought against Gatlin charging him with violating Miss. Code Ann. § 97-19-83 contained the mandated elements of Unif. Crim. R. Cir. Ct. Prac. 2.05. He was provided with sufficient notice of the charges against him in order to prepare an adequate defense.

¶33. At the close of all the evidence Gatlin's attorney renewed her motion to quash the indictment and made a motion for a directed verdict. The trial judge ruled as follows:

BY THE COURT:

My ruling that was put on the record this morning at this stage of the proceeding, if anything, is strengthened based on the testimony that we have today, or my decision has been strengthened. I'm not going to reverse and find that the indictment should have been quashed. Based on the testimony of Captain Gaillot, the February 24th of 1994, was the date that the forms were sent in beginning the forfeiture. And I may have misunderstood the testimony, but that would have been the last day that it could have been returned without his recommendation and approval of the U.S. Marshall Service or of an assistant U.S. Attorney. I find that the date makes it more plausible and gives the government, as alleged in the indictment, a more plausible claim or more of a colorable right to the money, based on the fact that the papers were filed prior to the times of the alleged offenses as set forth in the indictment. The scheme allegedly began on February 16th, when the first call was made. February 22nd, as alleged in Count Three, it was continued. The 4th of March, as in Count Three was continued. Count Four is alleged to have occurred on the 15th of March and then on. I find that the renewal of the motion to quash should be overruled. The Court stands by its prior ruling on the motion to quash. Further, as to the motion for directed verdict, the Court finds that at this stage of the proceeding, the State has met its burden of proof, that is when the evidence is taken in the light most favorable to the State, that the State has made out a prima facie case. And that is the standard by which I'm obligated to abide at this stage of the proceeding. I find that the motion for directed verdict should be overruled.

¶34. The trial judge found that the indictment was sufficient to inform Gatlin of the charges against him as required by Unif. Crim. R. Cir. Ct. Prac. 2.05. Further, he stated on the record that the evidence supported the charges alleged in the indictment. The findings made by the trial judge were correct. He did not commit error by denying both the motion to quash the indictment and the motion for directed verdict.

### III. WHETHER THE TRIAL COURT ERRED BY ALLOWING INTO EVIDENCE UNAUTHENTICATED TELEPHONE CALLS AND DOCUMENTS ALLEGED TO HAVE BEEN MADE AND MAILED BY GATLIN.

¶35. Gatlin argues that certain evidence should have been excluded because it was hearsay and did not come within an exception to the rule. He claims that the admission of a phone call to Gaillot where the caller identified himself as Gatlin was highly prejudicial because it was the basis for his conviction on Count One of the indictment. Gatlin also claims that the admission of a letter he purportedly sent to Gaillot was highly prejudicial in that it served as the basis for his conviction on Count Five.

¶36. This Court in its recent decision of *Young v. City of Brookhaven*, 693 So. 2d 1355 (Miss. 1997), restated its standard of review in determining the correctness of a trial judge's decision regarding the admission of evidence:

Under the Supreme Court's standard of review, the admissibility of evidence rests within the discretion of the trial court. *Baine v. State*, 606 So. 2d 1076, 1078 (Miss. 1992); *Wade v. State*, 583 So. 2d 965, 967 (Miss. 1991). However, this Court must also determine whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility. *Baine v. State of Mississippi*, 606 So. 2d at 1078. If in fact the trial court has incorrectly perceived the applicable legal standard in its fact findings, the Court applies a substantially broader standard of

review. *Id.* However, a denial of a substantial right of the defendant must have been affected by the court's evidentiary ruling. *Jackson v. State*, 645 So. 2d 921 (Miss. 1994); *Newsom v. State*, 629 So. 2d 611, 612 (Miss. 1993); *Collins v. State*, 594 So. 2d 29, 34 (Miss. 1992). Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs. *Parker v. State*, 606 So. 2d 1132, 1137-1138 (Miss. 1992).

*Young*, 693 So. 2d at 1358 (quoting *Peterson v. State*, 671 So. 2d 647, 655-56 (Miss. 1996)).

¶37. Gatlin first argues that the testimony given by Gaillot regarding the contents written on a memo pad was inadmissible hearsay. The trial judge allowed the testimony over Gatlin's contemporaneous objection.

Q. Is there a telephone number on that memo pad?

BY MS. BUSH: Again I object to hearsay.

BY THE COURT: Do you have the original of the document?

BY MR. GAILLOT: Yes, sir, I do.

BY THE COURT: The question is is there a telephone number on the document. I'll overrule the objection. You may answer the question.

A. Yes, there is.

Q. What is that telephone number?

BY MS. BUSH: Again, I object to hearsay.

BY THE COURT: Overruled.

¶38. Gaillot was allowed to testify as to the number that was listed on the memo pad as well as the fact that Gatlin was the name of the person who was supposed to be reached at that number. Gaillot was questioned by the State as to his conversation with the person who he called at the number listed on the telephone pad. Gatlin's attorney again objected.

BY MS. BUSH: I object to this because there has been no predicate laid that it was in fact Larry Gatlin, and I don't believe he can testify if it's not proved that he was Larry Gatlin, because it's hearsay.

BY THE COURT: I think the testimony, of course, will be subject to cross-examination. The witness is testifying about things that he has seen, such as the note pad and the phone number that he called. It's clear that the person, he does not know that the person was Larry Gatlin, but that the person identified himself as Larry Gatlin. All of this will be subject to cross-examination and the objection will be overruled.

Gatlin contends that all this evidence was impermissible hearsay evidence that should have been excluded, especially where there was no authentication of the telephone call.

¶39. The trial judge did not abuse his discretion by allowing this evidence to be admitted. The trial judge

states on the record that the witness is testifying to what he observed on the note pad and the name that was given to him by the person who he contacted at the number listed on the note pad.

¶40. There is no requirement of authentication as a condition precedent to admissibility where the evidence supports what the proponent claims. Miss. R. Evid. 901 (a). Telephone conversations are authenticated when the evidence shows that a call was made to a number assigned at the time by the telephone company to a particular person and self-identification shows that the person answering is the person who was called. Miss. R. Evid. 901 (b). In the case sub judice, Gaillot testified that the person with whom he talked on the telephone identified himself as Larry Gatlin.

¶41. "If the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then, the statement is not hearsay." Miss. R. Evid. 801, cmt. "To constitute hearsay, extra-judicial words must by some means present a statement, declaration, or assertion introduced for the purpose of proving the truth of the matter contained in or asserted by the item or thing." *Lee v. State*, 338 So. 2d 395, 397 (Miss. 1976). *See Swindle v. State*, 502 So. 2d 652, 658 (Miss. 1987); *McGowan v. State*, 375 So. 2d 987, 990 (Miss. 1979). The testimony of Gaillot regarding the memo pad and the telephone conversation was not admitted to prove that Gatlin was the one who made the call. Rather, the testimony was offered to prove that a telephone number was taken down on a memo pad and when Gaillot called the number the person who answered identified himself as Gatlin. This does not constitute hearsay. *See Alford v. State*, 508 So. 2d 1039, 1042 (Miss. 1987).

¶42. When the State sought to ask Gaillot questions pertaining to the handwritten letter he had received, Gatlin objected as to hearsay.

Q. Would you read that letter for us, please sir?

A. It says this is a memo stating --

BY MS. BUSH: I object again. This is hearsay and there is no proof that Mr. Gatlin wrote this letter.

BY THE COURT: How did you come in possession? It came in the same envelope?

BY MR. GAILLOT: I'm fairly confident that it did, Your Honor, but not absolutely certain.

BY THE COURT: I sustain the objection.

Q. Does that letter contain information that would only have been known by the person you had been talking with over the telephone that had sent you the information that you testified to previously?

A. Yes, sir, it's basically an explanation of the reason for sending the money to Los Angeles and it does refer to me by name.

BY MR. LAMPTON: Your Honor, I believe the document would be self-authenticating. I believe the contents of the document are such that would reveal who had in fact sent the document.

BY THE COURT: Are you offering it again into evidence, Mr. Lampton?

BY MR. LAMPTON: Yes, sir.

BY THE COURT: -- based on that qualification?

BY MR. LAMPTON: Yes, sir.

BY THE COURT: Let the document be received into evidence and marked Exhibit S-5.

¶43. Gatlin's attorney did not offer a contemporaneous objection to the admission of the letter into evidence based on the qualification laid by the State. Now on appeal, Gatlin argues that the letter was hearsay and was not self-authenticating according to Miss. R. Evid. 901. The letter was not hearsay for the same reasons Gaillot's testimony about the telephone calls were not hearsay. Further, Gatlin should not be able to argue to this Court on appeal that the letter was not self-authenticating. No objection was made by Gatlin at the time the letter was admitted into evidence based on the qualification by the State. Gatlin is procedurally barred for failing to raise a contemporaneous objection to the admission of the letter and has waived the argument for appeal purposes. *Holly v. State*, 671 So. 2d 32, 37 (Miss. 1996); *Holland v. State*, 656 So. 2d 1192, 1197 (Miss. 1995).

¶44. Even if Gatlin was not procedurally barred, his claims that the letter were not self-authenticating are without merit. Gaillot was questioned by the State whether the letter contained information that would only have been known by the person with whom he had been talking over the telephone and had sent information to Gaillot. Gaillot responded that the letter was an explanation of the reason why the money was being sent to Los Angeles and that the letter referred to him by name. Based on this qualification, the trial judge admitted the letter into evidence. The letter was sufficiently authenticated by the evidence supporting what Gaillot claimed. Miss. R. Evid. 901 (a).

¶45. There is also another basis supported by authority from this Court that holds the testimony by Gaillot was not hearsay. Gaillot talked to Gatlin on the telephone and received mail from him. Both of these acts were criminal according to the prohibitions of Miss. Code Ann. § 97-19-83. Because Gaillot's testimony was "relating, first-hand, relevant acts in [a] criminal offense," it was not hearsay. *McDavid v. State*, 594 So. 2d 12, 14 (Miss. 1992) (citing *Dutton v. Evans*, 400 U.S. 74 (1970)).

¶46. Although the above arguments support a finding that the testimony of Gaillot was not hearsay, Gatlin's objection to the testimony was later waived on cross-examination. Gatlin's attorney on cross-examination questioned Gaillot regarding the telephone calls and the letter to which Gaillot had previously testified on direct examination. Gatlin's attorney had previously objected to testimony surrounding the telephone calls and the letter. "[W]hen an objection to testimony is interposed and the objection is overruled and the objecting party cross-examines the witness with reference to this same matter to which he had interposed an objection, the objection is waived." *Dycus v. State*, 440 So. 2d 246, 255 (Miss. 1983); *See also Fielder v. State*, 235 Miss. 44, 108 So. 2d 590 (1959).

¶47. The trial judge did not abuse his discretion by admitting the testimony by Gaillot and the handwritten letter into evidence. Gatlin's clams of error as to this issue are without merit.

## IV. WHETHER THE SENTENCE PRONOUNCED AGAINST GATLIN WAS CONSTITUTIONALLY DISPROPORTIONATE TO OTHERS SIMILARLY SITUATED.

¶48. Gatlin had previously been indicted along with nine other persons for conspiracy to sell cocaine. The State filed a motion for nolle prosequi as the indictment pertained to Gatlin. The nine others either pled guilty or were convicted at trial.

¶49. Gatlin alleges on appeal that Judge Starrett, who presided over the nine cases of conspiracy, was prejudiced against him at his trial for wire fraud. Gatlin claims that the sentence he received for his conviction of six counts of wire fraud was disproportionate to others similarly situated. As proof of the trial judge's prejudice against him, Gatlin directs this Court's attention to comments made by the judge during sentencing.

> BY THE COURT: Mr. Gatlin, I have reviewed your pre-sentence investigation and it is relatively clean. There are no prior felony convictions, not even a significant misdemeanor record. But the whole nexus of this money and this eleven ounces of cocaine and all the other things that evolved around this conspiracy are rotten. The whole thing is rotten. I don't know what your involvement was, but apparently you made claim to this $19,000 that was seized at the New Orleans International Airport.

¶50. Gatlin did not object to this statement at the time of sentencing. Further, Gatlin did not raise an objection to this statement or allege prejudice in his motion for judgment notwithstanding the verdict or in his motion for a new trial. Failure to make a contemporaneous objection waives this issue for appeal purposes. *Holly*, 671 So. 2d at 37; *Holland*, 656 So. 2d at 1197.

¶51. Alternatively, there is no evidence that Gatlin suffered any prejudice as a result of his sentence. A person convicted under the wire fraud statute shall be fined not more than $10,000 or imprisoned for not more than five years, or both. Miss. Code Ann. § 97-19-83 (1994). Gatlin was convicted of six counts of wire fraud. He could have been sentenced up to thirty years or fined up to $60,000 or both. Instead, Gatlin was sentenced to five years each on Counts 1, 2, and 3 to run concurrently, and five years each on Counts 4, 5, and 6 to run concurrently. Counts 4, 5, and 6 were to run consecutively to Counts 1, 2, and 3, for a total sentence of ten years in the penitentiary. The last four years of the sentence was suspended, and Gatlin was given five years probation. He was also fined $1000 for Count 1 and $1000 for Count 4. Gatlin's sentence was within the parameters of Miss. Code Ann. § 97-19-83. "'This Court has consistently held that a sentence will be upheld if within the statutory limits. Also, where a sentence does not exceed statutory limits, it does not constitute cruel and inhuman treatment.'" *Sanders v. State*, 678 So. 2d 663, 669 (Miss. 1996) (quoting *Adams v. State*, 410 So. 2d 1332, 1334 (Miss. 1982)).

¶52. Gatlin states that his attempt to defraud should not be considered as serious as an actual completed fraud. However, Miss. Code Ann. § 97-19-83 prohibits persons from executing or attempting to execute the scheme by the specified transmissions. Gatlin's argument that his attempt should not be as heavily punished is answered by this Court's decision in *Sanders*. Where the sentence does not exceed the statutory limits, it will be upheld. *Sanders*, 678 So. 2d at 669.

## CONCLUSION

¶53. The trial judge did not commit reversible error by overruling Gatlin's motions to quash the indictment and directed verdict. The evidence presented at the lower court supported the charges in the indictment. Ownership is not an element to be proven under Miss. Code Ann. § 97-19-83. It is enough that the government have a colorable claim that can be defeated by one who can show sufficient proof of ownership.

¶54. The trial judge did not abuse his discretion by allowing the testimony regarding the telephone calls and mailed documents into evidence as it was not hearsay. The record indicates the purposes for the admission

of this evidence, and the Miss. R. Evid. provide for its admission.

¶55. Lastly, Gatlin's sentence was within the parameters of Miss. Code Ann. § 97-19-83. This Court has repeatedly held a sentence will be upheld if it is within the statutory limits. Gatlin's sentence did not exceed those limits.

¶56. Gatlin's arguments on appeal are without merit. Therefore, the lower court decision is affirmed.

¶57. **CONVICTION OF WIRE FRAUD (SIX COUNTS) AND SENTENCE OF FIVE (5) YEARS FOR EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNTS ONE, TWO AND THREE SHALL RUN CONCURRENTLY. COUNTS FOUR, FIVE AND SIX SHALL RUN CONCURRENTLY, BUT COUNTS ONE, TWO AND THREE SHALL RUN CONSECUTIVELY WITH COUNTS FOUR, FIVE AND SIX WITH THE LAST FOUR YEARS SUSPENDED FOR FIVE YEARS PROBATION. APPELLANT SHALL PAY COURT COSTS, ATTORNEY'S FEES, $1000.00 FINE AS TO COUNT ONE, AND $1000.00 FINE AS TO COUNT FOUR.**

**PITTMAN, P.J., SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J. PRATHER, C.J., JOINS IN PART.**

**BANKS, JUSTICE, DISSENTING:**

¶58. Because I believe that the conviction in this case rests impermissibly on hearsay evidence, I dissent. I also write to explicate my disagreement with the majority interpretation of the statute, although that difference does not cause a different result.

I.

¶59. To treat the latter issue first, the majority states in response to the ownership claim that all that is required is "colorable claim." There is no authority cited for this observation. My reading of the statute suggests to me that not even a "colorable claim" in some other person needs to be alleged or proved. *See* Miss. Code Ann. § 97-19-83 (1994). The proof need only establish that the defendant sought to obtain money by false representation. Perhaps an accused's showing that he had a right of ownership or possession in the money sought to be obtained would present a valid defense on some theory. *See e.g.,* Art. 223.1 (3), Model Penal Code (suggesting a claim of right defense to all theft crimes.) As the statute is written, however, I see no burden on the prosecution to establish ownership in another.

II.

¶60. The point of difference that dictates a different result has to do with the hearsay/authentication problem with the evidence in this case. The problem is that Gatlin is not shown to have committed a crime unless it is

established by permissible forms of proof that it was him on the other end of the telephone.

¶61. The majority rejects the hearsay claim for a number of reasons. The first reason is a notion of waiver. In *Fielder v. State*, 235 Miss. 44, 108 So. 2d 590 (1959), upon which *Dycus v. State,* 440 So. 2d 246 (Miss. 1983) relied and upon which the majority relies in part for rejecting the hearsay claim, the court cited a litany of reasons why the hearsay claim there should be rejected, including waiver by cross-examination and, significantly in my view, the fact that the declarants in the hearsay testimony themselves testified. Unfortunately, the waiver suggestion became known as the "Fielder Rule" and was referred to in a few other cases without citation other than to *Fielder*. I don't find that such a rule was ever actually applied except in *Dycus* and then, as here, only as an alternative. The problem is that it is simply no longer a rule which we embrace, if it ever was. The failure of Shepard's to recognize it notwithstanding, we suggested that the Fielder Rule was a thing of the past in *Merritt v. State*, 517 So. 2d 517, 519-20 (Miss. 1987). There the court cited *Stringer v. State*, 500 So. 2d 928, 946 (Miss. 1986) and *Jones v. State*, 461 So. 2d 686, 702 (Miss. 1984) for the principle that a litigant is entitled to rely upon the rulings of the trial court and try the case as if they were correct without waiving error. We have applied this rule even to allow a defendant to bring out prior convictions on direct once admissibility had been established over objection through motion in limine. *See McGee v. State*, 569 So. 2d 1191 (Miss. 1990). The Fielder Rule, if it ever was, is no more and should not be resurrected here.

¶62. The other alternate reason for avoiding the hearsay rule is, in my view, suspect as well. The opinion says that Gaillot talked to Gatlin on the telephone and received a letter from him. Of course, the point of the hearsay objection is that Gaillot had no way of knowing to whom he was talking. He was given a note which someone said contained a number for Gatlin and he talked to someone on the phone who said he was Gatlin. In order to make the connection to Gatlin in fact, these assertions must be accepted as true. That is, these are assertions by unknown persons offered for the truth therein, in other words, hearsay. M.R.E. 801(c).

¶63. Reliance on *McDavid v. State*, 594 So. 2d 12 (Miss. 1992) is misplaced. In *McDavid,* there was never any question as to who was talking. The witness spoke face to face with McDavid. That case does not stand for the proposition that evidence relevant to a criminal act is some how an exception to the hearsay rule.

¶64. Leaving the procedural bar as to the letter aside for the moment, the next concern is the first conclusion in this section. The opinion suggests that the conversation was not admitted to prove who made the call. That is true only in part. True, the conversation itself for the most part formed a part of the crime. That is, it showed an attempt on the part of someone to obtain the funds. *See* Miss. Code Ann. § 97-19-83 (1994). The problem is who. That part of the conversation in which the speaker identified himself as Gatlin is the part that is hearsay. It is clearly offered to prove the truth of the assertion.

¶65. Next, the question of authentication is a problem. The opinion suggests that the letter contained information that could only have been known by the person to whom Gaillot spoke on the phone. That, of course, begs the question, to whom did he speak? The letter is not otherwise identifiable with Gatlin.

¶66. This brings us to the question whether Rule 901 controls. If, when correctly applied, Rule 901 suggests that the telephone conversations are authenticated, the hearsay objection fails.

¶67. The facts do not fit, Rule 901 (b)(6), an illustration of the rule which speaks directly to telephone

conversations. Wilson testified that 835-0988 was the number to a car wash. Despite the fact that the question was not put precisely, a fair inference, perhaps, is that this was a number to a car wash operated by Gatlin. Technically, however, in reference to the illustration, the number was not shown to have been assigned to Gatlin nor was the conversation shown to have been related to the business of the car wash.

¶68. It is true that this portion of the rule is only an illustration, however, and the question to be answered is whether, based upon all of the evidence a finding can be made that the evidence is what it purports to be. *See* Miss. R. Evid. 901(a). Under Miss. R. Evid. 104(b), "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." The Advisory Committee Notes to Fed. R. Evid. 104, from which our rule is derived, indicate that this situation is one involving "conditional relevancy", and as such, the determination by the court is "preliminary" with the jury having the ultimate determination. Fed. R. Evid. 104. Because of the centrality of the issue to conviction here, that finding has to be made beyond a reasonable doubt. That is, to the extent that the standard for admission of evidence under Rule 901 is less than the "beyond a reasonable doubt standard" that the jury must apply as a whole, even if it passed muster under 901, the evidence was insufficient to support a conviction. *See **Smith v. State***, 656 So. 2d 95 (Miss. 1995) (finding that while evidence of a prior incident was admissible on the question of intent, it was insufficient standing alone to support conviction beyond a reasonable doubt).

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION. PRATHER, C.J., JOINS IN PART.**

1. Miss. Code Ann. § 97-19-83 (1994) provides:

(1) Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money, property or services, or for unlawfully avoiding the payment or loss of money, property or services, or for securing business or personal advantage by means of false or fraudulent pretenses, representations or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, transmits or causes to be transmitted by mail, telephone, newspaper, radio, television, wire, electromagnetic waves, microwaves, or other means of communication or by person, any writings, signs, signals, pictures, sounds, data, or other matter across county or state jurisdictional lines, shall, upon conviction, be punished by a fine of not more than Ten Thousand Dollars ($10,000.00) or by imprisonment for not more than five (5) years, or by both such fine and imprisonment.

(2) For the purposes of venue under the provisions of this section, any violation of this section may be prosecuted in the county in which the delivery or transmission originated, the county in which the delivery or transmission was made, or the county in which any act in execution or furtherance of the scheme occurred.

(3) This section shall not prohibit the prosecution under any other criminal statute of the state.

2. Now URCCC 7.06.