853 So.2d 125 (2003)
Jimmy McGEE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01686-COA.
Court of Appeals of Mississippi.
March 11, 2003.
Rehearing Denied May 6, 2003.
Certiorari Denied August 21, 2003.
*128 Edward D. Lancaster, Houston, attorney for appellant.
Office of the Attorney General, by Billy L. Gore, attorney for appellee.
Before SOUTHWICK, P.J., LEE AND MYERS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Jimmy McGee was convicted by a circuit court jury of wire fraud. On appeal, McGee challenges the conviction by alleging that it was an improper criminal prosecution of a civil debt, that jeopardy had attached when an earlier indictment was dismissed, and that the jury venire was improperly drawn from residents outside the judicial district. McGee further contends that reversal is required because of various procedural errors regarding the admissibility of evidence, an amendment of the indictment, and jury instructions. Finally, McGee challenges the weight and sufficiency of the evidence. We find no error and affirm.

STATEMENT OF FACTS
¶ 2. The State's view of events is that McGee pursued a scheme that involved first the ordering and prompt payment for relatively small amounts of wholesale furniture, then after the confidence of the seller had been gained, the purchase and quick delivery of a much larger amount of furniture for which McGee never intended to pay. Whether that was the proper view of events is the principal issue underlying both the trial and the appeal. The facts of this alleged swindle follow.
¶ 3. On November 11, 1999, Jimmy McGee placed his third and final order for furniture with T's Manufacturing in Okolona. Approximately one month earlier, McGee had purchased between $1200-$1500 in furniture, paying cash and hauling it personally in a truck. For his second purchase of approximately $3100 in furniture, McGee again returned personally to haul the pieces. Rather than paying cash, however, McGee paid with a check. The check cleared the bank, paving the way for McGee's final order. This time, McGee arranged for an entire truckload of furniture, valued at $7775, to be shipped to McGee's base of operations in Nashville, Tennessee. McGee directed that the invoice be faxed to his company, and assured the plant manager that payment would be wired or sent by overnight delivery. The furniture was delivered; the payment never was.
¶ 4. With no payment forthcoming after numerous attempts to contact McGee, an indictment was generated charging McGee with false pretenses. See Miss.Code Ann. § 97-19-39 (Rev.2000). That indictment was dismissed with prejudice, as the judge ruled that the issue was a civil matter. The grand jury issued a second indictment, charging McGee with wire fraud under Miss.Code Ann. § 97-19-83 (Rev.2000). McGee was later convicted after a two day trial.

DISCUSSION
1. Indictment for wire fraud
¶ 5. McGee first argues that pursuant to the Mississippi Constitution's prohibition against the imprisonment for debt, his conviction was improper. Miss. Const. § 30 (1890). McGee relies on the dismissal of his false pretense indictment as well as *129 case law that interprets the crime of false pretense as relating solely to "present or past fact," which would exclude conviction based on a false promise to make a future payment. State v. Allen, 505 So.2d 1024, 1025 (Miss.1987). We agree that McGee's alleged intent never to make a future payment despite a promise to do so appears to run afoul of Allen's interpretation of the false pretense statute. However, McGee was convicted under the wire fraud statute. We must independently examine what that offense requires.
¶ 6. The mail fraud statute prohibits certain actions taken for pecuniary advantage "by means of false or fraudulent pretenses, representations, or promises...." Miss.Code. Ann. § 97-19-83(1) (Rev.2000). "Promises" by definition are future actions, not the past or present frauds prohibited under the false pretense statute. The Mississippi Supreme Court indicated that deceitful promises of future conduct are criminalized under this statute, as it quoted approvingly that interpretation of a similar federal wire fraud statute. Gatlin v. State, 724 So.2d 359, 364 (Miss.1998) (citing McNally v. U.S., 483 U.S. 350, 359, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987)). Whether Gatlin actually made a holding to that effect may be disputed, and McGee does. Yet we adopt the reasoning of McNally and specifically hold that Mississippi's wire fraud statute reaches "false promises and misrepresentations as to the future as well as other frauds involving money or property." Id.
¶ 7. McGee additionally contends that the dismissal of the false pretense indictment with prejudice barred the State from proceeding against him under the wire fraud statute. He suggests that because the wire fraud indictment arises from the same nucleus of facts as the false pretense charge, double jeopardy has attached. We recount here the basic law in Mississippi as to double jeopardy:
Double jeopardy protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. White v. State, 702 So.2d 107, 109 (Miss.1997). "Where the two offenses for which the defendant is punished or tried cannot survive the same elements test, the double jeopardy bar applies.... The same elements test, sometimes referred to as the `Blockburger' test, inquires whether each offense contains an element not contained in the other; if not, they are the `same offense' and double jeopardy bars additional punishment and successive prosecution." Id. (quoting United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556, (1993)). Even though there may be a substantial overlap in the proof supporting the convictions of the different crimes, the Blockburger test is met where each offense requires proof of an element not necessary to the other. Bannister v. State, 731 So.2d 583, 586 ¶¶ 12 (Miss.1999). Double jeopardy does not protect a defendant against different prosecutions for different offenses. Moore v. State, 617 So.2d 272, 274-75 (Miss.1993).
Greenwood v. State, 744 So.2d 767, 770-71 (Miss.1999).
¶ 8. McGee's second indictment does not conflict with double jeopardy rules. The wire fraud charge was a distinct offense, one which required proof of different elements than those of the false pretense charge which was dismissed. Though the charges included in the false pretense indictment perhaps should not have been termed a "civil matter," we agree that a conviction for false pretenses would have been infirm. McGee was convicted for a *130 fraudulent future promise to pay. A false pretense charge does not encompass such facts; the wire fraud charge does.
2. Jury venire
¶ 9. McGee contends that the jury venire was improperly drawn from beyond the bounds of the Second Judicial District of Chickasaw County. McGee admits that there is a statute allowing a court to reach beyond a judicial district and draw a jury from the entire county in those counties with two judicial districts. Miss.Code Ann. § 13-5-21 (Rev.2002). McGee is arguing that the lower court abused its discretion here.
¶ 10. McGee objected to the venire after the jury had been selected but before the jury was impaneled. The lower court responded:
The Second Judicial District is composed of approximately 3500 qualified electors, a very small jury pool. Since the Court has been on the bench in 1993, it's extremely difficult to obtain a jury that was not acquainted with either the case, related to witnesses, or related to each other on the jury; so the Court by prior order has ordered the Circuit Court Clerk to draw the jury from both judicial districts in order to expand the jury pool to be certain that a fair and impartial jury as nearly as possible could be impaneled....
¶ 11. The discretion afforded the lower courts in drawing jurors from beyond the bounds of a judicial district should be utilized sparingly. Gathings v. State, 822 So.2d 266, 272 (Miss.2002). However, jury selection will not warrant reversal unless used in a manner which was "fraudulent, unfair or deprived the defendant of due process...." Beckwith v. State, 707 So.2d 547, 597 (Miss.1997) (quoting Armstrong v. State, 214 So.2d 589, 594 (Miss.1968), cert. denied, 395 U.S. 965, 89 S.Ct. 2109, 23 L.Ed.2d 750 (1969)). Reviewing this record, we find no hint of impropriety in the selection, impaneling, or deliberations of the jury, and no prejudice to McGee as a result.
3. Prior indictment
¶ 12. McGee next challenges the admissibility of evidence of a prior indictment in Alabama for larceny by deception. McGee attempted to limit the introduction of the indictment into evidence and was granted an instruction that would prohibit its use unless "the door was opened" on cross-examination. Two attorneys were called to testify on McGee's behalf as to facts of their earlier representation of McGee. When the district attorney attempted to argue that the first witness "swung the door wide open," the lower court sustained McGee's objection and prohibited testimony on the indictment. However, the judge reserved a final ruling on excluding the testimony of the second witness. When that person testified, the State again claimed that the witness had "opened the door." This time, the lower court agreed, and allowed the prosecutor to question the attorney as to his knowledge of McGee's Alabama indictment.
¶ 13. The analysis of this issue focuses first on whether the testimony was invited by McGee. McGee called the attorney as a witness and questioned him on direct examination, with nothing asked or answered that is alleged to have provided an opening for evidence about the Alabama indictment. Instead, it was answers during the prosecutor's cross-examination which purportedly created invitation for evidence about the foreign indictment. Those answers were that the attorney believed McGee when his client denied ever having received the furniture that is the basis for the Mississippi indictment. A defendant's character may be rebutted if *131 the defendant's witness brings his character in issue on direct examination. M.R.E. 404(a)(1); Quinn v. State, 479 So.2d 706, 708 (Miss.1985). The problem, though, is that the State elicited the invitation. When one party invites himself, that the other party then opens the door is a natural response and not a relinquishment of rights. Kelly v. State, 735 So.2d 1071, 1086 (Miss.Ct.App.1999). This was not even an invitation to where the State quickly went. The attorney stated that he believed McGee and did not think that his client had ever lied to him. The State then showed that he had been indicted for a similar crime. The defense must be responsible for "opening the door" before the State is entitled to enter. That did not occur here.
¶ 14. We find error, but that does not determine whether reversal is required. Only if McGee suffered prejudice as a result of the error are we to reverse. Burns v. State, 729 So.2d 203, 219 (Miss. 1998). The State was seeking to prove similar incidents involving other furniture sellers, in order to reveal McGee's intent as to the events that underlay the indictment. In addition to evidence of the Alabama indictment that we find should not have been admitted, the State presented evidence of two other Mississippi victims who had been subject to similar transactions with McGee.
¶ 15. Larry Owens, a furniture manufacturer in Jumpertown, testified that in August 1999, McGee began purchasing items. For the first two transactions, McGee paid cash. The following three loads were purchased with a check. Finally, on October 14, 1999, Owens shipped furniture ordered by McGee from a telephone in South Georgia. McGee assured Owens that he would have a business partner forward a check by overnight delivery. Owens never received payment for the nearly $4000 worth of furniture he shipped at McGee's request, despite numerous attempts to contact McGee.
¶ 16. Another witness was Darrell Hurt. He testified that he owned a furniture manufacturing business in Ripley, Mississippi. In April 1999, about seven months before the events in this case, McGee purchased furniture from Hurt. For the first load he paid cash. For the second load, a week later, McGee again paid cash. A few days later, McGee sought a third load, assured Hurt that as soon as he delivered it to south Texas, he would be back to pay for that latest furniture. No payment was ever made despite several assurances that he would do so.
¶ 17. We find that there was sufficient independent evidence to dilute the effect of the improper evidence regarding the Alabama charges. Admission of evidence of the Alabama indictment, though error, was cumulative to proper evidence and did not prejudice McGee.
4. Hearsay
¶ 18. McGee challenges rulings on hearsay objections. He primarily argues that one of the witnesses for T's Manufacturing, assistant plant manager W.L. Tackitt, repeatedly offered testimony of out-of-court statements made by various representatives of McGee.
¶ 19. The record reveals instances of improper hearsay being admitted. What McGee has failed to demonstrate is the prejudicial effect this hearsay had on the outcome of the trial. The most important of the hearsay issues concerns Tackitt's testimony about what McGee's secretary had told him. That error is harmless because Tackitt also testified that McGee himself stated, in effect, "the check's in the mail." There is no hearsay issue as to testimony recounting what the defendant *132 himself told the witness. M.R.E. 801(d)(2)(A). We find no reversible error as to hearsay.
5. Amending the indictment
¶ 20. McGee finds error in the trial court's amendment of the indictment. The court allowed the alteration of the date of the offense listed on the indictment from December 16, 1999, to November 11, 1999, in order to conform to the proof. McGee also challenges the deletion of certain telefax numbers which were listed on the indictment.
¶ 21. McGee submits that the alteration of the dates on the indictment constituted a change in substance, rather than form. A change in substance can be made only by the grand jury. Miller v. State, 740 So.2d 858, 862 (Miss.1999). Here, however, the change of date did not rise to the level of prejudice to the defendant. Mississippi law forgives indictments which are flawed for "stating the time imperfectly" of an offense, where the timing of such is not an essential element of the charge. Miss.Code Ann. § 99-7-5 (Rev.2000). The lower court committed no error in amending the indictment as to the date of the offense.
¶ 22. Similarly, the removal of the fax numbers as surplusage was within the trial court's discretion. An element of the offense to be proven under the wire fraud statute is the transmission or cause of transmission in furtherance of the scheme "across county or state jurisdictional lines." Certainly evidence of some form of transmission was necessary. However, we do not find that the deletion of the telefax numbers substantively altered the charge against McGee or the burden of proof held by the State in making its case. The purpose of an indictment is to provide the defendant with notice of the charges against him. Eakes v. State, 665 So.2d 852, 860 (Miss.1995). Which numbers were used to send the facsimile invoice did not form any part of McGee's defense, and thus their deletion was only a change in form.
6. Admitted testimony
¶ 23. McGee next argues that the court improperly allowed the testimony of the two furniture salesmen who suffered similar losses to McGee. McGee contends that he never put his character into question; therefore he argues that testimony of these other bad acts violated M.R.E. 404(b). One of the elements of the charge of wire fraud to be proven by the State is the existence of a scheme to defraud. Rule 404(b) permits evidence of other bad acts to be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b). The State offered the witnesses to prove McGee's "intent to steal by this scheme to show his motive, his preparation, his plan, his knowledge in the absence of mistake or accident," expressly tracking the very evidentiary rule considered here. The testimony of the witnesses demonstrated both a pattern of fraud by McGee and the methods of his scheme.
7. Jury instructions
¶ 24. McGee also contends that the court erred in failing to grant two jury instructions. The first is merely a restatement of McGee's argument that the prosecution of the wire fraud indictment is an improper attempt to circumvent the prohibition against imprisonment for civil debt. There was no legal basis for that argument, and the instruction was properly denied.
¶ 25. The second instruction McGee sought included a definition of *133 fraud as conduct "which fails to match the reflection of moral uprightness of fundamental honesty, fair play and right dealing" and that the telefaxing must be "in execution of the fraudulent scheme." McGee contends that one federal court, in interpreting the federal wire fraud statute, required proof of both the existence of the scheme to defraud and the use of the mail or telefax for the purpose of executing the scheme. U.S. v. Curry, 681 F.2d 406, 410 (5th Cir.1982). McGee seems to suggest that in denying this instruction, the lower court failed to instruct the jury on the "use of the mail" element of the charge.
¶ 26. One of the State's instructions given to the jury specifically required the jury to find guilt if convinced "that the defendant transmitted ... either to or from Chickasaw County, Mississippi... telephone, wire communications, or mail for the purpose of carrying out the scheme." Jury instructions should be read as a whole, rather than separately. Jones v. State, 797 So.2d 922, 926 (Miss.2001). Furthermore, a trial court is not required to give duplicative instructions. Id. To the extent there was something relevant in the denied instruction, it was covered elsewhere.
¶ 27. We find no error in the lower court's refusal to give McGee's jury instructions.
8. Exhibits
¶ 28. McGee submits that certain evidence marked for identification purposes should have gone to the jury for its deliberation. McGee reasons that an equal number of exhibits was required "so equal weight could have been given to all exhibits." The legal "weight" of evidence is not measured by the literal weight or size of exhibits. See Sturdivant v. State, 745 So.2d 240, 248 (Miss.1999).
9. Weight and sufficiency of the evidence
¶ 29. Woven into various of his previous arguments, McGee asserts error by the trial judge in failing to grant his motion for directed verdict, motion for judgment notwithstanding the verdict, or motion for new trial. These motions operate as challenges to the weight and sufficiency of the evidence supporting the verdict.
¶ 30. First, we address McGee's motion for directed verdict. As with a motion for a judgment notwithstanding the verdict, a directed verdict motion challenges the evidence's sufficiency. Franklin v. State, 676 So.2d 287, 288 (Miss.1996). We must consider all evidence in a light favorable to the State, disregarding all evidence favoring the defendant. Taylor v. State, 656 So.2d 104, 107 (Miss.1995). We should enter an acquittal only if, after reviewing the evidence in this way, we are convinced that no reasonable, hypothetical juror would find the defendant guilty. Tait v. State, 669 So.2d 85, 88 (Miss.1996). The evidence in this case, viewed favorably toward the verdict, satisfies these tests. The evidence was sufficient to support the jury's finding.
¶ 31. Similarly, when considering a motion for new trial, we must consider the weight of the evidence. We will not interpose our will upon the lower court's order denying it unless the overwhelming weight of the evidence renders the verdict an "unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Here the State's evidence was persuasive. We find no error in the trial court's denying McGee a new trial. There is no merit to this argument.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT FOR THE SECOND JUDICIAL DISTRICT OF CHICKASAW COUNTY OF CONVICTION OF WIRE *134 FRAUD AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FINE OF $10,000, AND $100 TO VICTIM'S COMPENSATION FUND IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.