# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-02084-SCT

*DONALD HALES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/24/2004 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANIEL KYLE ROBERTSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ANTHONY BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-05/18/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Donald Hales was indicted by the grand jury of the Second Judicial District of Jones County for the possession of a controlled dangerous substance, in violation of Miss. Code Ann. Section 41-29-139 (Rev. 2005).  Hales was tried before a jury in the Circuit Court and found guilty of the illegal possession of cocaine.  The circuit court sentenced Hales to a sixteen-year sentence with four years suspended.  Hales was then remanded to the custody of the Mississippi Department of Corrections to serve a total of twelve years.  It is from this conviction and sentence that Hales perfected the present appeal.

¶2.     After due consideration, we find no error by the trial court in this case. Accordingly, the judgment of the trial court is affirmed.

**FACTS**

¶3.     On or about February 11, 2004, Laurel narcotics officers secured a search warrant and arrived at an apartment occupied by Donald Hales.  The officers knocked on the door and announced their presence, but heard what they perceived to be running water emanating from the bathroom area of the apartment.  The officers then decided to breach the entryway of the residence in order to prevent the possible destruction of evidence.  The officers discovered Hales standing in the bathroom holding some sort of towel or rag in his hand.  Also, officers found Hales' female companion taking a shower.  Both individuals were taken into custody, and the officers commenced a search of the apartment.

¶4.     During the search, officers noticed a non-working stove in one of the cluttered rooms in the apartment.  Officers lifted the top panel of the stove and saw a bag containing a rock like substance, which appeared to be crack cocaine.  In addition, two razor blades covered in a white powdery substance were discovered on a table in the apartment.  These items, which contained the suspected illegal substance, were collected and submitted to the crime lab for chemical analysis.  After testing,  the crime lab determined the substance covering the razor blades was a cocaine residue and the bag contained 5.71 grams of cocaine.

¶5.     On March 24, 2004, Hales was indicted for possession of 5.71 grams of cocaine, in violation of Section 41-29-139.  Hales was subsequently tried by a jury before the circuit

court. At trial the State presented evidence, including photographs and officer testimony, in an attempt to demonstrate that Hales was knowingly in possession of a controlled dangerous substance. Hales failed to produce evidence or testimony to contradict the State's evidence. Instead, Hales testified on his own behalf during the hearing and admitted residing in the apartment that was searched by the narcotics officers. Hales denied having any knowledge of the cocaine that was recovered in his apartment by the officers. Alternatively, Hales suggested his girlfriend's son and a friend stashed the cocaine in his apartment without his knowledge.

¶6. After closing arguments, the circuit court submitted the case to the jury for deliberations. Shortly thereafter the jury returned a guilty verdict. Hales was sentenced and subsequently filed a motion for a new trial, or in the alternative, a motion for judgment notwithstanding the verdict. The circuit court overruled Hales' motions. Hales now appeals to this Court.

## ANALYSIS

### I. MOTION FOR MISTRIAL

¶7. Prior to commencement of the trial, Hales' counsel motioned the trial court to exclude any items other than the cocaine that was recovered in Hales' apartment. The following relevant communications took place pretrial:

> DEFENSE COUNSEL: One brief thing, there's - - I see that there is several things that Mr. Van Syckel has in his possession that was [sic] recovered pursuant to the search warrant. My client is charged with possession of 5.71 grams of cocaine. I would move the court for an order prohibiting the State

3

from introducing anything else that was a fruit of the search warrant other than the cocaine which he's on charge for here today.

PROSECUTION: Well, Your Honor, there's the cocaine.

TRIAL COURT: If it's not pursuant to the search warrant, what was identified to be searched for, we all know that can't be brought in. If it's something that they went there to find, if there's other contraband - -

PROSECUTION: It will all be related to cocaine, Your Honor, but so the Court will know, they found the cocaine and then they found two razor blades, which are used to cut cocaine, that the crime lab will identify as razor blades with cocaine residue. That's the only other thing that was found.

DEFENSE COUNSEL: There's also marijuana that was found.

PROSECUTION: We're not getting into that.

TRIAL COURT: Okay. Well, let's go then.

¶8. This pretrial discussion left Hales, not unreasonably, with the impression the district attorney would not divulge any evidence of the presence of marijuana to the jury. However, during the direct examination one of the narcotics officers the district attorney admitted a color photograph into evidence which depicts a razor blade, a cell phone, a bottle of beer, a bag of cocaine, and what appeared to be a small plastic bag of marijuana. Hales' attorney insists he was unaware the color photograph contained marijuana because the prosecution submitted a black and white copy of the photograph during pretrial discovery. Further, defense counsel maintains the poor quality of the black and white copy rendered an indecipherable image of the bag of marijuana at issue. Moreover, Hales' defense counsel maintains the only time he saw the color photograph was prior to its admission into evidence.

4

Hales' counsel did receive a disc, which would have revealed the color photo at issue had counsel had it printed. Hales' counsel did not print the color photo.

¶9. Hales contends this color photograph clearly violated the pretrial order because of the marijuana it portrays. Hales also claims the only purpose for offering the color photograph was to inflame and prejudice the jury. We note the photograph at issue is clearly suspect in that it contained the cocaine and other items, when the record clearly reflects only the cocaine was found in the stove. It appears the photo at the center of controversy here was clearly one taken of all the seized items together and did not adequately demonstrate where the seized items were physically located in Hales' apartment when first observed by the officers. The trial court was concerned about the color photograph and made the following remarks:

> TRIAL COURT: Now, on this photograph here, I know it's in evidence and it's been presented in evidence. The only thing that disturbs me about it is the fact that it's obvious what it is. And to put a photograph into evidence and not be a part of the crime that's involved here is kind of disturbing to the Court because it's - - I don't know.
>
> PROSECUTION: As I said, Your Honor - -
>
> TRIAL COURT: It's not a matter of what you said. It's a matter of what you did. You presented it to the jury, a picture of a substance there that anybody - - I mean, I don't know what these peoples' common experiences are. I would suspect that there is somebody on this injury [sic] that, taking all the statistics that we deal with from time to time and peoples' knowledge about what cocaine looks like, it's obvious that there would be somebody on the jury that while they're deliberating in the jury room if this picture is presented that it would be obvious that it would be - - that's what it would be. So I don't know why y'all want to put something like that in.
>
> PROSECUTION: Well, I'm not even looking for marijuana. All my witnesses have - -

5

TRIAL COURT: It's not a matter of what you're looking for. It's a matter of something that has been presented to the jury showing that you've got another substance here. You've got beer. You've got all that stuff here.

PROSECUTION: Beer is not illegal.

TRIAL COURT: And I don't know whether it's put in there to inflame the minds of the jury. You got a knife and all that stuff up there in this photograph. Was that all put there as a composite to present to the jury to inflame the minds of the jury? I don't know.

. . . .

TRIAL COURT: I'm just making a record on how I feel about this kind of tactic. And that's all I can say.

. . . .

TRIAL COURT: I'm not going to do anything. I'm going to let it go in just like it is because it's already gone to the jury. And then I'm going to let you go to the Supreme - - let them go to the Supreme Court, and let them do what they need to do about it. I'm just telling you that it's my point I don't understand why you do these things. Period.

PROSECUTION: Well, I don't know what these things is, Your Honor.

¶10.    When the trial court allowed the prosecution an opportunity to explain why such a photograph was admitted into evidence, the prosecution offered that it was merely an attempt to admit a razor blade into evidence. In response, Hales maintains the color photograph at issue was not necessary merely for the admission of a razor blade.

¶11.    While we acknowledge the concerns of the trial judge regarding the photograph, this issue is barred from consideration because defense counsel failed to contemporaneously and timely object to the admission of the photograph. The prosecution presented the color

6

photograph to defense counsel before admitting it into evidence without an objection. The photo was admitted without objection, and only after the prosecution completed his direct examination of the narcotics officer did the defense finally bring the alleged prejudicial nature of the photograph to the trial court's attention.

¶12. This Court has consistently held "that the failure to make a contemporaneous objection at trial constitutes a waiver of any error subsequently assigned." *Moawad v. State*, 531 So. 2d 632, 634 (Miss. 1998)(citing *Irving v. State*, 498 So. 2d 305 (Miss. 1986); *Gates v. State*, 484 So. 2d 1002 (Miss. 1986)). *See also Wainright v. Sykes*, 433 U.S. 72, 97 S. Ct 2497, 53 L. Ed. 2d 594 (1997). *Accord Walker v. State*, 473 So. 2d 435 (Miss. 1985); *Ward v. State*, 461 So. 2d 724 (Miss. 1984); *Tubbs v. State*, 402 So. 2d 830 (Miss. 1981). In this case, defense counsel objected to the photograph outside the timely and contemporaneous realm required by this Court. Therefore, this issue is not properly before this Court on direct appeal, and we are procedurally barred from considering it.

¶13. Hales submits admission of the photograph constitutes reversible error by the trial court, and thus his motion for a mistrial should have been granted. However, after a thorough review of the record, we find neither the word "mistrial" nor Hales' alleged motion for a mistrial. This Court has stated on numerous occasions "that an appellant is responsible for bringing to our attention and presenting to this Court a record of trial proceedings sufficient to undergird his assignments of error." *Winters v. State*, 473 So.2d 452, 457 (Miss. 1985). See, e.g., *Yates v. State*, 342 So.2d 312, 316 (Miss. 1977); *Shelton v. Kindred*,

279 So. 2d 642, 644 (Miss. 1973). Despite the prosecution's actions in this case, which border on prejudicing the defendant, this Court cannot consider reversing the ruling of a trial court when the alleged ruling is not in the record. Therefore, the trial court did not erroneously overrule Hales' motion for a mistrial, because there is no evidence in the record that Hales' ever made such a motion. Thus, this Court is procedurally barred from considering such a claim of error.

¶14. However, this Court now calls attention to the trial court's concerns regarding what the trial judge referred to as the prosecutor's "tactics" in this case. The trial judge only allowed evidence of the cocaine, and the State agreed not to mention any marijuana. While indeed, the prosecutor did not mention marijuana, the prosecutor's conduct certainly raises concerns. The color photograph at issue clearly shows a substance that a juror might conclude is marijuana. In the interest of justice, this Court frowns upon any conduct regarding evidence and prior court rulings which might appear suspect. To help avoid this type of conduct this Court provided a simple prosecutorial roadmap over a century ago:

> The fair way is the safe way, and the safe way is the best way in every criminal prosecution. The history of criminal jurisprudence and practice demonstrates, generally, that if everyone prosecuted for crime were fairly and fully conceded all to which he is entitled, and if all doubtful advantages to the state were declined, there would be secured as many convictions of the guilty, and such convictions would be succeeded by few or no reversals.

*Flowers v. State*, 842 So. 2d 531, 564 (Miss. 2003) (citing *Johnson v. State*, 476 So. 2d 1195, 1215 (Miss. 1985); *Hill v. State*, 72 Miss. 527, 534, 17 So. 375, 377 (1895)). In accordance with this guideline we pose the following question: was the color photograph the

prosecutor surreptitiously slipped into evidence the lynchpin of the state's case? After a diligent review of the record we are certain the answer is no. Moreover, the prosecutor's actions unnecessarily jeopardized what was otherwise a solid evidentiary case. Therefore, for future reference we take this opportunity to point out that prosecutors can avoid such a quandary by taking the fair and safe route regarding inadmissible evidence during trial.

¶15.   In this case, the prosecutor's actions were not well received by the trial court, nor are they by this Court. However, due to defense counsel's failure to make a contemporaneous objection, the aforementioned procedural bar prevents the Court from considering this issue on direct appeal. Thus, this issue is without merit.

## II.  RIGHT TO A MEANINGFUL APPEAL

¶16.   Hales argues he has been denied the right to a meaningful appeal because of substantial omissions in the record. Hales states that the court reporter's failure to transcribe five bench conferences as well as a number of other courtroom utterances resulted in severe prejudice in filing this appeal. Hales does not accept fault for the incomplete record, and maintains reversal is required.

¶17.   This very issue was presented in *Simmons v. State*, 805 So. 2d 452 (Miss. 2001). In *Simmons* this Court stated:

> Simmons did not follow the proper procedure for correcting omissions in the record as set out in the Mississippi Rules. M.R.A.P. 10(c). The *Watts* case indicates that the failure to do so acts as a procedural bar to raising the issue on appeal. *Watts v. State*, 717 So. 2d 314, 317 (Miss. 1998).

9

The argument that the absence of bench conference transcripts hurts the defense's case on appeal is meritless. Defense counsel failed to object to the lack of transcriptions at the time; thus, he is procedurally barred from raising the issue on appeal. **Burns v. State**, 729 So. 2d 203, 212 (Miss. 1998) ("It is in poor grace for counsel to participate without objection in unrecorded bench conferences and complain for the first time on appeal.") (quoting **Thorson v. State**, 653 So. 2d 876, 895 (Miss. 1994)).

*Id*. at 506.

¶18.    In this case, Hales also did not follow the proper procedure for correcting the alleged omissions in the record as set out in the Mississippi Rules of Appellate Procedure. See M.R.A.P. 10. Moreover, there is no evidence that Hales attempted to ensure a complete record. Therefore, in accordance **Simmons**, Hales is procedurally barred from asserting this assignment of error. Therefore, this issue is without merit.

### III. SUFFICIENCY AND WEIGHT OF THE EVIDENCE

¶19.    The trial court denied Hales' post trial motion for a new trial, or in the alternative, motion for JNOV. Hales now submits the trial court erred by not granting a directed verdict, peremptory instruction, JNOV, or alternatively, a new trial.

¶20.    "A motion for new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying a motion for new trial." **Dilworth v. State**, 909 So. 2d 731, 737 (Miss. 2005)(citing **Howell v. State**, 860 So. 2d 704, 764 (Miss. 2003); **Edwards v. State**, 800 So. 2d 454, 464 (Miss. 2001); **Sheffield v. State**, 749 So. 2d 123, 127 (Miss. 1999)). "The appellate court will not order a new trial 'unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand

would sanction 'unconscionable justice.'" ***Howell***, 860 So. 2d at 764(quoting ***McDowell v.***

***State***, 813 So. 2d 694, 699-700 (Miss. 2002)).

¶21.    Motions for directed verdicts, JVOVs, and requests for peremptory instructions

challenge the legal sufficiency of the evidence presented at trial. ***Jefferson v. State***, 818 So.

2d 1099, 1110-11 (Miss. 2002). Moreover, all employ the same standard of review. ***Id***.

> Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving the benefit of all favorable inference that may be reasonably drawn from the evidence.  If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render.  On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

***Id***.  at 1111.

¶22.    Hales insists the jury's verdict is against the overwhelming weight of the evidence and

the State failed to prove guilt beyond a reasonable doubt.  Further, Hales alleges that taking

all of the credible evidence in the case at bar as true, reasonable and fair-minded jurors could

only have acquitted him of the possession of cocaine.  We do not agree.

¶23.    At trial the State demonstrated Hales was the resident of the apartment searched by

narcotics officers, pursuant to a valid search warrant. In addition, through copious testimony

and physical evidence, the State showed that 5.71 grams of cocaine, as well as razor blades

containing a cocaine residue were discovered in the Hales residence.  In response to the

State's evidence, defense counsel failed to call any witnesses to the stand other than the

11

defendant himself. Hales denied any knowledge of the cocaine recovered, and insinuated his girlfriend's son may have actually owned the drugs. The State presented adequate evidence to support the conclusion that Hales was in possession of the cocaine recovered.

¶24. This Court has held that "we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury." *Hyde v. State*, 413 So. 2d 1042, 1044 (Miss. 1982) (quoting *Evans v. State*, 159 Miss. 561, 132 So. 563, 564 (1931)). This issue presents a straight issue of fact and should not be reversed, for if this Court were to reverse the verdict in this matter the province and prerogative of the jury would certainly be invaded.

¶25. After diligent review of the record, it is our opinion the reasonable juror could not have arrived at a contrary verdict, as the facts are sufficient to support the jury's verdict. Therefore, the verdict is not against the overwhelming weight of the evidence and must be allowed to stand. Thus, the trial court did not abuse its discretion. This issue is without merit.

### IV. CUMULATIVE ERROR

¶26. Finally, Hales argues even if this Court somehow finds no single error calling for reversal, it should nonetheless grant a new trial based on the cumulative effect of the errors asserted. This Court has previously held "that individual errors, not reversible in themselves may combine with other errors to make up reversible error." *Byrom v. State*, 863 So. 2d 836,

12

847 (Miss. 2003). *See also* **Hansen v. State**, 592 So. 2d 114, 142 (Miss. 1991); **Griffin v. State**, 557 So. 2d 542, 553 (Miss. 1990). However, "[w]here there is 'no reversible error in any part, . . . there is no reversible error to the whole.'" **Gibson v. State**, 731 So. 2d 1087, 1098 (Miss. 1998)(quoting **McFee v. State**, 511 So. 2d 130, 136 (Miss. 1987)).

¶27.    In this case, all of the previous issues have been considered and determined to be without merit. Therefore, we find the cumulative effect of the errors alleged by Hales, does not warrant reversal of the jury's verdict. Thus, this issue is also without merit.

## CONCLUSION

¶28.    For the foregoing reasons, the trial court was not in error, nor did it abuse its discretion. Further, the evidence submitted at trial was such that no reasonable juror could have reached a contrary verdict. Therefore, the judgment of the trial court is affirmed.

¶29.    **CONVICTION OF POSSESSION OF COCAINE (5.71 GRAMS) AND SENTENCE OF SIXTEEN (16) YEARS, WITH FOUR (4) YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J. AND DIAZ, J., NOT PARTICIPATING.**