996 So.2d 106 (2008)
Perry L. MASK, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01014-COA.
Court of Appeals of Mississippi.
June 24, 2008.
Rehearing Denied October 7, 2008.
Certiorari Denied December 11, 2008.
*107 Clay Spencer Nails, Corinth, attorney for appellant.
Office of the Attorney General, by Deirdre McCrory, attorney for appellee.
Before KING, C.J., GRIFFIS and CARLTON, JJ.
GRIFFIS, J., for the Court.
¶ 1. Perry L. Mask was convicted of murder and sentenced to serve a term of life without parole in the custody of the Mississippi Department of Corrections. On appeal, Mask argues that the trial court erred in: (1) granting jury instruction C-18, (2) not granting a mistrial due to the prosecutor's improper closing argument, (3) denying his motion for a directed verdict, and (4) denying his motion for a new trial. We find no error and affirm.

FACTS
¶ 2. On February 29, 2004, Charles Bascomb and his son, Jason Zubke, were parked in a car on County Road 306 in Alcorn County, Mississippi. Mask approached the car and shot Bascomb in the back. Bascomb died five days later. For twenty days, Mask evaded numerous attempts for his arrest. Mask was eventually arrested in Alcorn County.
*108 ¶ 3. At trial, Zubke testified that on the day in question, he and his father, Bascomb, were traveling to Reagon Moss's house. They went to see Moss because Moss and Bascomb had gotten into a fight the night before. Zubke testified that Christy Moss was outside of the house when Bascomb and Zubke arrived. She told them that Mask had a gun.
¶ 4. Zubke testified that Mask approached the car and asked them to meet him on a dirt road. Zubke stated that he left with Bascomb, but Mask followed them. Zubke testified that Mask signaled for them to pull over, so they pulled the car over near a cemetery on County Road 306. According to Zubke, Mask then walked up to the driver's side window of Bascomb's car, pulled out a gun, and said, "[y]ou ripped us off.... You don't think I will shoot you. I will." Zubke testified that after this statement Mask shot Bascomb in the back and stated, "I didn't mean to shoot your dad. I just meant to scare him.... If my name gets out to the cops, I am coming back for you and the rest of your family." After Mask fled in his maroon truck, Zubke waived down a truck driver for help. Another truck driver arrived and called 9-1-1.
¶ 5. During cross-examination, Mask's attorney attempted to impeach Zubke with a prior statement that he gave to an investigator with the Alcorn County Sheriff's Department. In that statement, Zubke said that he went to Moss's house with Bascomb to see Mask and not to see Moss. Furthermore, in his statement, Zubke claimed that Mask told them to meet him on County Road 306 and that they went to County Road 306 and waited on Mask. This statement is slightly different from Zubke's testimony because at trial Zubke testified that Mask pulled him and Bascomb over. Zubke's testimony regarding the events of the shooting, however, were consistent with his statement. Zubke also admitted that he had smoked marijuana on the morning of the shooting and that Bascomb borrowed money from Moss before the shooting.
¶ 6. Anthony Luttrel, the first truck driver to arrive after the shooting, testified next for the State. Luttrel testified that Zubke said Mask shot his father over some money. Luttrel also stated that before he got to the scene of the shooting he was almost hit by a maroon truck that was being driven recklessly.
¶ 7. Next, Michael Beckner, an investigator with the Alcorn County Sheriff's Department, testified. Investigator Beckner arrived at the scene of the shooting when Bascomb was being airlifted to the hospital. Investigator Beckner interviewed Zubke. Zubke told Investigator Beckner that Mask shot his father.
¶ 8. Investigator Beckner also interrogated Mask twice after Mask was captured. Investigator Beckner testified that during one interrogation, Mask said that he shot Bascomb when he and Bascomb were fighting over a gun. During the other interrogation, Mask said that he had to shoot Bascomb or Bascomb would shoot him.
¶ 9. Dr. Steven T. Hayne, the pathologist who performed the autopsy, opined that Bascomb's death was caused by a bullet that lacerated Bascomb's spinal cord.

ANALYSIS

I. Whether the trial court erred in giving jury instruction C-18.
¶ 10. Mask argues that the trial court erred when it accepted the State's jury instruction C-18, which is a flight instruction. Instruction C-18 reads as follows:
The Court instructs the Jury that flight is a circumstance from which guilty *109 knowledge and fear may be inferred. If you find from the evidence in this case, beyond a reasonable doubt, that the defendant, PERRY L. MASK, did flee from the scene of the death of Charles A. Bascomb, then the flight of Perry L. Mask is to be considered with all other evidence in this case. You will determine from all of the facts whether the flight was from a conscious sense of guilt or whether it was caused by other things, and give it such weight as you think it is entitled to in determining the guilt or innocence of PERRY L. MASK.
¶ 11. In Shaw v. State, 915 So.2d 442, 447(¶ 18) (Miss.2005), the Mississippi Supreme Court considered a similar instruction. The supreme court stated:
We have consistently held that a defendant's flight is admissible as evidence of consciousness of guilt. However, a flight instruction is appropriate only where the flight is unexplained and somehow probative of guilt or guilty knowledge. Therefore, evidence of flight is inadmissible where there is an independent reason for the flight. Also, it is well settled that evidence of flight or escape is admissible as an exception to M.R.E. 404(b) in order to show guilty knowledge. While evidence of flight is admissible under Rule 404(b), it must be filtered through M.R.E. 403.
Id. (citations omitted). The supreme court held that "[i]n determining whether to admit evidence of flight under Rule 403, the trial court is afforded great discretion." Id.
¶ 12. Here, the trial judge decided to give the flight instruction after he found that Mask had not put forward any evidence that explained the flight, and he found that the evidence of flight was admissible under Mississippi Rule of Evidence 403. Mask now argues that this finding was in error because Investigator Beckner testified that Mask said he shot Bascomb in self-defense.
¶ 13. Mask argues that Tran v. State, 681 So.2d 514, 519 (Miss.1996) is instructive on this issue. In Tran, the supreme court found that the defendant and the co-defendant fled the scene of the murder "to avoid retribution from the friends of [the victim]." Id. The supreme court held that:
where the defendant is arguing self-defense, a flight instruction should be automatically ruled out and found to be of no probative value. A flight instruction will have particular prejudicial effect in a case where self-defense is argued. Where the person against whom self-defense has been exercised ... flight seems logical and necessary.... To suggest and highlight, through the sanction of a court granted instruction, that the defendant's flight was possibly an indication of guilt suggests that the court does not accept the self-defense argument.
Id. (quoting Banks v. State, 631 So.2d 748, 751 (Miss.1994)).
¶ 14. Tran is readily distinguishable. First, the defendant in Tran actively pursued the defense of self-defense. Here, the only evidence of the possibility of self-defense came from Investigator Beckner's testimony regarding what Mask told him during the two interrogations. Neither of these hearsay statements rise to the level of actively asserting the defense of self-defense. Second, the defendants in Tran explained that they fled because they were trying to avoid retribution. In the present case, there was no evidence that Mask fled because he feared retribution.
¶ 15. We find that Mask did not offer any evidence of an alternative explanation for why he fled the scene of the shooting, and the trial judge properly applied the test in Shaw. Therefore, we find no merit to this issue.

*110 II. Whether the trial court erred in not declaring a mistrial due to an alleged improper closing argument.

¶ 16. Mask argues that the trial court erred by not declaring a mistrial because the State, during its closing argument, commented on his right not to testify. During Mask's closing argument, one of Mask's attorneys stated:
Now, when Mr. Beckner was on the witness stand, he testified he investigated and gathered information ... from the witnesses. Even in his investigation, he ... just took Mr. Zubke's statement and went on.... Something more should have been done. Something more should have been presented on that witness stand as far as witnesses are concerned, as far as documents are concerned, to make you feel comfortable as to what decision you are going to make.
(Emphasis added). During rebuttal, the prosecutor responded that Mask's attorney "also alludes to these other witnesses. They put witnesses on the stand that testified. They can call those witnesses also if there is pertinent evidence." After this statement was made, Mask objected.
¶ 17. "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." Slaughter v. State, 815 So.2d 1122, 1130(¶ 45) (Miss.2002). "Given the latitude afforded an attorney during closing argument, any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety." Ballenger v. State, 667 So.2d 1242, 1270 (Miss. 1995) (quoting Ahmad v. State, 603 So.2d 843, 846 (Miss.1992)).
¶ 18. After reviewing the comments made by Mask's attorney and the State, we find that the State did not infringe on Mask's right not to testify. We find that the prosecutor merely attempted to rebut the accusations made by Mask's attorney in his closing argument that the State did not call enough witnesses or present all the evidence that was available to them. See Turner v. State, 953 So.2d 1063, 1072(¶ 30) (Miss.2007) (finding a prosecutor's comment to be "a fair response to the defense's claim that the State failed to call some witnesses who could have been helpful to the jury"). Thus, we find no merit to this issue.

III. Whether the trial court erred in denying Mask's motion for a directed verdict.
¶ 19. When reviewing a motion for a directed verdict, the Court looks to the sufficiency of the evidence. Gleeton v. State, 716 So.2d 1083, 1087(¶ 14) (Miss. 1998). All of the evidence must be construed in the light most favorable to the verdict. Id.
Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render.
Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (citing Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). However, if reasonable jurors could have reached different conclusions with respect to every element of the offense, the evidence will be considered sufficient. Id. The prosecution receives the benefit of all "favorable inferences that may be reasonably drawn from *111 the evidence" when determining if the evidence presented was sufficient to support the verdict. Smith v. State, 839 So.2d 489, 495(¶ 12) (Miss.2003).
¶ 20. Mask was charged with murder. Mississippi Code Annotated section 97-3-19(1)(a)-(b) (Rev.2006) defines murder as:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: (a) When done with deliberate design to effect the death of the person killed, or of any human being; (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual....
¶ 21. To support Mask's conviction, the State presented the following evidence. Zubke testified that Mask approached his father, pointed a gun at his father, and shot his father. Zubke also testified that Mask said it was an accident right after he shot Bascomb. Even if it was an accident, a reasonable juror could still find Mask guilty of depraved-heart murder under section 97-3-19(1)(b).
¶ 22. Mask, however, argues that there was not sufficient evidence because Investigator Beckner testified that Mask claimed that he shot Bascomb in self-defense. A reasonable juror could reject this argument because Bascomb was shot in the back. A disputed issue of fact does not mean that there is insufficient evidence. This is merely a question of fact that should be resolved by the jury. Hales v. State, 933 So.2d 962, 968(¶ 24) (Miss. 2006).
¶ 23. After reviewing the evidence in the light most favorable to the verdict, we find that there was sufficient evidence for the trial judge to deny Mask's motion for a directed verdict.

IV. Whether the trial court erred in denying Mask's motion for a new trial.
¶ 24. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush, 895 So.2d at 844(¶ 18). The evidence is weighed in the light most favorable to the verdict. Id. "[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (citation omitted). If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.
¶ 25. There were only two witnesses to the shooting: Mask, the defendant, and Zubke, the victim's son. Zubke was the only witness who testified. Mask argues that this Court should consider Investigator Beckner's testimony that Mask stated the shooting was in self-defense. Mask also argues that little weight should be placed on Zubke's testimony because Zubke was under the influence of illegal drugs, and Zubke was impeached several times during the trial.
¶ 26. The verdict was not against the overwhelming weight of the evidence because Zubke made consistent statements in court and to other individuals after the shooting about what Mask did and said right before he shot Bascomb. Furthermore, the attempted impeachment involved insignificant details that happened prior to the shooting. "We have routinely held that the jury is the judge of the credibility of a witness." Price v. State, 898 So.2d 641, 652(¶ 25) (Miss.2005). We *112 refuse to overturn the factual determinations of the jury in this case. Therefore, we find no merit to this issue.
¶ 27. We affirm Mask's conviction and sentence.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ALCORN COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.