# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-01333-SCT

*MAURICE BROWN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/25/2016 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | BRENT E. SOUTHERN |
| | JACK BRADLEY McCULLOUCH |
| | ESEOSA GWENDLINE AGHO |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: BENJAMIN ALLEN SUBER |
| | GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KITCHENS, P.J., AND BEAM, J.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     On the morning of July 30, 2015, Maurice Brown entered the home from which Mattie

Moore, the neighborhood "candy lady," sold candy, chips, soda pops, cigarettes, and other

knick-knacks. Mattie Moore's granddaughter, who lived with her grandmother, was startled

from her sleep when her grandmother loudly called her name. A young African-American

man, whom the granddaughter, Cheramie Moore, later identified from a photograph lineup as Maurice Brown, appeared in the doorway to her bedroom with a shotgun in hand. The man demanded that Cheramie Moore "give me the stuff" and she produced about a hundred dollars from a nearby drawer. Maurice Brown handed the cash to his brother, Jonathan Brown, who had come up behind him holding a cigar box which belonged to Mattie Moore. With Maurice Brown still pointing his gun in Cheramie Moore's direction, the pair backed down the hall toward a door to the outside. Maurice Brown was indicted for two counts of armed robbery. After trial in the Circuit Court of the First Judicial District of Hinds County, Maurice Brown was convicted of the first count, the armed robbery of Cheramie Moore, and was acquitted of the second count, the armed robbery of Mattie Moore. He was sentenced to a prison term of twenty-seven years. On appeal, Maurice Brown argues that the evidence was insufficient to support his conviction for armed robbery. Because his contention is meritless, we affirm.

## STATEMENT OF THE FACTS

¶2. Eighty-one-year-old Mattie Moore lived on Harry S. Truman Drive in Jackson, Mississippi, with her granddaughter, Cheramie Moore, and her grandson, James Warren, also known as "Blue Jean." To supplement her income, Mattie Moore sold sundries, including candy, chips, soda pops, and cigarettes, from her home to people in the neighborhood.

¶3. On the morning of July 30, 2015, Cheramie Moore, who worked at St. Dominic Hospital as a nurse on the oncology floor and had been released at 7:00 a.m. from a twelve-hour shift, returned to the home she shared with her grandmother and fell asleep. She was

startled awake by the sound of her wheelchair-bound grandmother loudly calling her name. A young African-American man met Cheramie Moore at the door to her bedroom wielding a shotgun. When the man ordered Cheramie Moore to "give me the stuff," she produced about a hundred dollars from a nearby drawer. Cheramie Moore recognized the man from the neighborhood and later identified him from a photograph lineup as Maurice Brown. She testified that Maurice Brown's brother, Jonathan Brown, whom she also later identified in a photograph lineup, "came up behind" Maurice Brown with a cigar box in hand. Maurice Brown then handed Jonathan Brown the cash. The cigar box belonged to Mattie Moore and Cheramie Moore stated that her grandmother kept rolled-up change in the box.

¶4.     Cheramie Moore testified that Maurice Brown pointed the shotgun at her and at her grandmother and that his doing so placed her "in a state of sheer panic" and in "fear[] for [her] life." According to Cheramie Moore, Maurice Brown "kind of stood there for a moment" and he and Jonathan Brown "kind of backed away slowly." She continued: "[t]hey kept the gun on me but they kind of backed away toward the door" and, "[a]s they were exiting our hallway they kind of did, like, this motion towards me and my grandmother." She clarified that "Maurice still had the gun in his hand" and that "Jonathan was on the side of him."

¶5.     When the pair left, Cheramie Moore called 911. Officer James Roberts, who at the time was employed by the Jackson Police Department Robbery Homicide Division, was called to the scene to investigate. Officer Roberts interviewed Mattie and Cheramie Moore.

3

Officer Roberts's investigation led him to the home of Antoinette Brown, who informed him that the description "sounded like her nephews."

¶6. A photographic lineup then was prepared which included a photograph of Maurice Brown. According to Detective Corey Jenkins, a Jackson Police Department Robbery Homicide Detective, Cheramie Moore identified Maurice Brown from the photographic lineup as the person who had robbed her and her grandmother. Detective Jenkins testified that he did not show the photo lineup to Mattie Moore because she was considered legally blind.

¶7. Maurice Brown was indicted for two counts of armed robbery pursuant to Mississippi Code Section 97-3-79 (Rev. 2014) on January 21, 2016. Prior to Maurice Brown's trial and unrelated to the facts of this case, Mattie Moore died; her funeral took place the Saturday before trial began.

¶8. Maurice Brown was tried in the Circuit Court of the First Judicial District of Hinds County from August 8-10, 2016. At the conclusion of the State's case, Maurice Brown filed a Motion for a Directed Verdict, which the trial court denied.

¶9. Jonathan Brown, Maurice Brown's brother, testified as a witness for the defense and gave an account of the events of July 30, 2015, which differed from Cheramie Moore's version. Jonathan Brown, who was under indictment,[1] waived his Fifth Amendment privilege

---

[1] Jonathan Brown appears to have been indicted for a separate crime. His lawyer stated that he had advised "Jonathan Brown that he has a pending case against him in this courtroom. I've advised him that obviously, even though he's not indicted as a codefendant to his brother in this case, that he is [for] all [intents and] purposes a codefendant in this case."

against self-incrimination. He testified that he and his brother went to the Moore residence to confront Blue Jean about an inappropriate remark Blue Jean allegedly had made in reference to the Browns' ninth-grade sister's figure. Blue Jean was not there, and, according to Jonathan Brown, Mattie Moore, the candy lady, who was sitting in the driveway, asked him to help her into the house. Jonathan Brown said he had been to the candy lady's house before. He continued that his brother, Maurice Brown, "came to open the door." According to Jonathan Brown, when Mattie Moore turned her head, he—Jonathan Brown—stole a cigar box and two packs of cigarettes. He stated that his brother, Maurice Brown, "was standing in the doorway," but that when he first went into Mattie Moore's house, his brother had been in the driveway. Jonathan Brown testified that he ran out of the house without paying for the items, that the cigar box he stole contained twenty-two dollars, and that neither he nor his brother had a gun.

¶10.    The jury found Maurice Brown guilty of the first count of armed robbery, the armed robbery of Cheramie Moore, and acquitted him of the second count, the armed robbery of Mattie Moore. A sentencing hearing was held on August 25, 2016. Brown received a twenty-seven-year sentence. His Motion for Judgment Notwithstanding the Verdict, or, in the Alternative, for a New Trial, was denied.

¶11.    The sole issue Maurice Brown raises on appeal is whether the evidence was sufficient to support the guilty verdict.

5

## STANDARD OF REVIEW

¶12. This Court has held that, in reviewing whether sufficient evidence exists to support a verdict, the "critical inquiry is whether the evidence shows 'beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), *abrogated on other grounds by* *Little v. State*, 2017 WL 4546740 (Miss. Oct. 12, 2017), (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). "'[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Bush*, 895 So. 2d at 843 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

¶13. This Court continued:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render.

*Bush*, 895 So. 2d at 843 (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)). But if the evidence "is of such quality and weight" that, "'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,'" the evidence will be deemed to have been sufficient." *Id.* (quoting *Edwards*, 469 So. 2d at 70).

6

## DISCUSSION

¶14.    The elements of armed robbery are:

> "(1) a felonious taking or attempt to take; (2) from the person or from the presence; (3) the personal property of another; (4) against his will; (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon."

*Lenoir v. State*, 224 So. 3d 85, 91 (Miss. 2017) (quoting *Cowart v. State*, 178 So. 3d 651, 666 (Miss. 2015) (citing Miss. Code Ann. § 97-3-79 (Rev. 2014))).

¶15.    Maurice Brown claims on appeal that the evidence to support his conviction was insufficient because Jonathan Brown testified that he, not Maurice Brown, took items from Mattie Moore and that neither of them had a gun. Maurice Brown points out that he "was only identified by [Cheramie] Moore at trial as the person that took the money from her at gun point."

¶16.    But Cheramie Moore testified that she had been startled awake by the sound of her grandmother's loudly calling her name, that Maurice Brown had met her at the door to her bedroom with a shotgun in hand, that Maurice Brown had instructed her to give him "the stuff," whereupon she had produced about a hundred dollars in cash. Cheramie Moore continued that Maurice Brown's brother, Jonathan Brown, "came up behind" Maurice Brown holding Mattie Moore's cigar box, in which she kept rolled-up change. Maurice Brown handed his brother the cash and kept the shotgun pointed at Cheramie Moore. The pair then backed down the hallway slowly, toward the door. Cheramie Moore testified that Maurice Brown pointed the shotgun at her and that his doing so placed her "in a state of sheer panic" and in "fear[] for [her] life."

¶17. According to Cheramie Moore's testimony, Maurice Brown took from her person and presence property belonging to her and to her grandmother against her will by putting her in fear of immediate injury by the exhibition of a shotgun. Her testimony supports each element of the crime of armed robbery. "[V]iewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843 (quoting *Jackson*, 443 U.S. at 319).

¶18. Maurice Brown argues that the jury should have discarded Cheramie Moore's testimony in favor of Jonathan Brown's. But a testimonial conflict is not enough to overcome a jury's verdict:

> This Court has held that "we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury."

*Hales v. State*, 933 So. 2d 962, 968 (Miss. 2006) (quoting *Hyde v. State*, 413 So. 2d 1042, 1044 (Miss. 1982)). Here, "if this Court were to reverse the verdict in this matter the province and prerogative of the jury would certainly be invaded." *Hales*, 933 So. 2d at 969. Moreover, this Court has held that:

> The testimony of a single uncorroborated witness is sufficient to sustain a conviction, *Holt v. State*, 186 Miss. 727, 191 So. 673 (1939), *Ragland v. State*, 403 So. 2d 146 (Miss. 1981), even though there may be more than one person testifying to the contrary, *Freeland v. State*, 285 So. 2d 895 (Miss. 1973); *Clanton v. State*, 279 So. 2d 599 (Miss. 1973).

*Williams v. State*, 512 So. 2d 666, 670 (Miss. 1987). The jury was entitled to believe Cheramie Moore's version of events and to reject Jonathan Brown's.

¶19.   Maurice Brown argues also that no physical evidence connected him to the crime, though "[f]inger prints were taken." But "[t]he absence of physical evidence does not negate a conviction where there is testimonial evidence." *Lenoir*, 224 So. 3d at 94 (quoting *Burleson v. State*, 166 So. 3d 499, 512 (Miss. 2015)).

## CONCLUSION

¶20.   Because the evidence was sufficient to support Maurice Brown's conviction for the armed robbery of Cheramie Moore, this Court affirms his conviction and sentence.

¶21.   **AFFIRMED.**

**RANDOLPH, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.  WALLER, C.J., NOT PARTICIPATING.**