# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00936-COA

**RAYFIELD LEROY WILLIS A/K/A RAYFIELD WILLIS**   APPELLANT

**v.**

**STATE OF MISSISSIPPI**   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/2021 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/04/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Rayfield Leroy Willis appeals his jury conviction of possession of a firearm by a felon for which the Copiah County Circuit Court sentenced him as a habitual offender to serve ten years in the custody of the Mississippi Department of Corrections without eligibility for parole. Willis raises a single issue on appeal, namely, whether the circuit court erred in admitting an audio recording of a witness being interviewed. Finding no error, we affirm Willis's conviction and sentence.

**Facts**

¶2.    A Copiah County grand jury indicted Willis on February 23, 2021, for possession of a firearm by a felon pursuant to Mississippi Code Annotated section 97-37-5 (Rev. 2014).[1] After a trial on July 28, 2021, a jury found Willis guilty of this charge.  Because Willis had been previously convicted of felony possession of cocaine in 1998 and pled guilty to felony sale of crack cocaine in 2008, he was also indicted and sentenced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2018).[2]  The following are

[1] Section 97-37-5 provides in part:

(1) It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.

(2) Any person violating this section shall be guilty of a felony and, upon conviction thereof, shall be fined not more than Five Thousand Dollars ($5,000.00), or committed to the custody of the State Department of Corrections for not less than one (1) year nor more than ten (10) years, or both.

[2] Section 99-19-81 states:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony unless the court provides an explanation in its sentencing order setting forth the cause for deviating from the maximum sentence, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

2

the facts of the incident giving rise to Willis' charges.

¶3. In the early morning hours of June 27, 2020, Willis was visiting next door at his neighbor Kercsheila Jackson's house. The homes were located in close proximity to each other and separated only by a driveway. Jackson was not at home, but her friend Omecia Skaggs and two of Jackson's six children were at the house. Around 2:30 a.m., Skaggs, Willis, his cousin, and another friend were sitting on the front steps leading up to the porch. Willis and the other men had been drinking, and Skaggs told them to quiet down because they were too loud while the children were sleeping. According to Skaggs, Willis became irate and started to cuss her out. Then he said, "Wait a minute, wait a minute," and left. He returned shortly thereafter with a pistol. Skaggs was still sitting on the porch steps, but she said she could see the gun cupped in Willis's hand in the light from the porch. Skaggs said that the gun was a revolver because she could see the cylinder. Skaggs said Willis then left again and went home.

¶4. Skaggs called Jackson and told her what had happened. Jackson came home, pulled up in her driveway, and entered her house from the back. As she came out onto the porch, she saw Willis standing in his yard. Skaggs told Jackson that Willis had cussed at her; then Jackson told Willis to stay on his side of the driveway, and she would stay on hers. Jackson moved to the end of her porch, and Willis moved to his porch. After exchanging a few more words, Jackson turned to go back to her front door. As she did, she heard two gunshots. Skaggs heard the shots as well, but she did not see who had the gun. Jackson said that at first, she did not see the gun. But after the first gunshot, she turned and saw that Willis was

3

still on his porch, and she saw the fire that came out of the gun with the second shot. Jackson then crawled inside and called the police. Jackson said that at the time of the shooting, Jacqueline Ruff, Willis's girlfriend, was not on the porch but on the steps close to Willis's porch.

¶5. Crystal Springs Police Officer Joseph McKenny responded. When he arrived, Jackson and Skaggs were on their porch, and Willis was on his porch. After speaking to the women, McKenny went next door and talked to Willis. McKenny said that Willis admitted to him that he had discharged the gun into the air. McKenny said Ruff joined them, and then she went inside the house to retrieve the gun. McKenny said Ruff told him that the gun was hers and that she had just purchased it two days ago. McKenny took possession of the Smith and Wesson revolver and secured it. However, McKenny performed no gunshot-residue tests on Willis, and the gun was never tested to see if it had been fired. McKenny also said Ruff told him that Willis had discharged the gun.

¶6. At trial, the State called Skaggs, Jackson, and McKenny to testify as summarized above. The parties stipulated that Willis was a felon at the time of the shooting. After the State rested, the court denied Willis's motion for a directed verdict.

¶7. Willis declined to testify and called Ruff as his only witness. On the stand, Ruff denied that Willis had the gun or fired the gun that night. She said that she had purchased the gun about three days before the shooting and that she had moved it from under her mattress to her dirty laundry hamper because Willis's nieces and nephews were coming over. She insisted that Willis did not know she had the gun. She also said that people in the

4

neighborhood had been shooting off fireworks because it was close to July 4. During her cross-examination, Ruff admitted that she recently had given a statement about the incident to the district attorney's investigator Keith Denson. She denied telling Denson that Willis had possession of the gun, shot the gun, or showed her how to use the gun that night by firing it into the air.

¶8.     After Ruff's testimony, the defense rested. The State then called Denson to testify as a rebuttal witness. After Denson explained his involvement with the investigation, he testified that he spoke to Ruff on the phone about a week before trial. Denson authenticated a Memorex CD containing a recording of that conversation and verified that the contents of the disk were a true and accurate depiction of that interview. Initially, Willis lodged no objection to playing the tape to the jury:

> MR. HENLEY:     Your Honor, I would like to have this marked and played for the jury.
>
> THE COURT:     Any objection?
>
> MR. McCARDLE: No objection.
>
> THE COURT:     So it will be marked as the next exhibit and published to the jury.

But, after the first few moments of the tape were played, Willis's attorney belatedly objected, saying:

> MR. McCARDLE: I'm going to object because there's no way that -- even though he says he called her, and I don't doubt he called her, he can't know that's who he was talking to. It's on the telephone, correct?
>
> MR. HENLEY:     Yeah.

5

| THE COURT: | I think it's already been marked and entered. |
|---|---|
| MR. HENLEY: | And began playing. |
| THE COURT: | That will be proper cross. |

The playing of the tape continued. At the beginning and again at the end of the tape, Ruff identified herself by name, address, and phone number. Ruff admitted that on the night in question, Willis knew about the gun that she had purchased and that she kept it under the mattress. She further said that the gun just had blanks and that Willis shot the gun in the air one time on the night in question. After the tape was played, Willis did not cross-examine Denson.

¶9. The jury considered the evidence, including witnesses' testimony, a photograph showing the proximity of the two houses, the gun, the recording of Ruff's telephone conversation with Denson, as well as the stipulation that Willis was a felon, and found Willis guilty of being a felon in possession of a firearm.

¶10. Willis filed a motion for a new trial, arguing that the circuit court had erred in allowing Denson to testify and in admitting the taped conversation with Ruff. Willis said that the testimony was not provided during discovery.[3] Willis also filed a motion for judgment notwithstanding the verdict (JNOV), arguing that the verdict was against and contrary to the overwhelming weight of the evidence and that the State did not prove its case beyond a reasonable doubt. The circuit court denied these motions, and Willis appealed.

¶11. The sole issue Willis raises on appeal is whether the circuit court erred in admitting

---

[3] Willis does not maintain this alleged discovery matter on appeal.

6

Denson's audiotaped telephone interview with Ruff into evidence.

## Standard of Review

¶12. "An appellate court's standard of review of a trial court's admission or exclusion of evidence is abuse of discretion." *Carothers v. State*, 152 So. 3d 277, 281-82 (¶14) (Miss. 2014) (citing *Osborne v. State*, 54 So. 3d 841, 845 (¶12) (Miss. 2011)). The trial court's ruling on the authenticity of evidence offered is also reviewed only for an abuse of discretion. *Ellis v. State*, 315 So. 3d 489, 498 (¶28) (Miss. Ct. App. 2020), *cert. denied*, 314 So. 3d 1164 (Miss. 2021). "Abuse of discretion is found when the reviewing court has a definite and firm conviction that the court below committed a clear error of judgment [in] the conclusion it reached upon a weighing of the relevant factors." *Univ. of Miss. Med. Ctr. v. Littleton*, 213 So. 3d 525, 535 (¶26) (Miss. Ct. App. 2016) (internal quotations marks omitted). In addition, "[w]here error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party." *Ladnier v. State*, 878 So. 2d 926, 933 (¶27) (Miss. 2004).

## Discussion

¶13. Willis argues that the tape was not properly authenticated and thus should not have been admitted into evidence. In response, the State first argues that Willis waived this issue on appeal because he failed to timely object to the audiotape. Notwithstanding the waiver argument, the State further contends that it made a sufficient showing of authenticity to support the circuit court's admission of the tape.

    *A.*    *Waiver*

¶14. It is well established that failure to contemporaneously object to the admission of evidence constitutes a waiver of the issue on appeal. In *Gatlin v. State*, 724 So. 2d 359, 369 (¶43) (Miss. 1998), when the defendant made no objection to a letter the State offered into evidence, the Mississippi Supreme Court held that the defendant "is procedurally barred for failing to raise a contemporaneous objection to the admission of the letter and has waived the argument for appeal purposes." We reiterated this principle in *Turner v. State*, 292 So. 3d 1006, 1033 (¶¶88-89) (Miss. Ct. App. 2020), where Turner failed to object to a photo lineup that contained handwritten notations until after the lineup had been admitted into evidence and the officer began to testify about his notations. We held that "a failure to make a contemporaneous objection waives an issue for appeal purposes." *Id*. at (¶89); *see also Brown v. State*, 37 So. 3d 1205, 1212 (¶15) (Miss. Ct. App. 2009) ("A defendant's failure to object to admission of evidence at trial waives his ability to appeal the issue.").

¶15. Moreover, the objection must be timely made. In *McGuire v. State*, 170 So. 3d 570, 577 (¶15) (Miss. Ct. App. 2014), we held that failure to timely object to evidence bars the issue on appeal. *Id.* In that case, prior to the admission of a recording of a neighbor's 911 call, McGuire had objected on the grounds of hearsay. *Id*. at 575 (¶9). The objection was overruled, and the recording was played for the jury. *Id*. But shortly after the jury was excused, McGuire moved for a mistrial, arguing that a specific statement in the recording was misleading to the jury, prejudicial, and untrue. *Id*. at 576 (¶11). The trial court denied the motion, finding that McGuire should have raised that objection to the statement before the recording was played. *Id*. On appeal, McGuire argued that the trial court erred in

8

allowing the statement from the 911 tape, but we found that the issue had no merit: "McGuire made a timely and contemporaneous objection as to hearsay, yet he failed to object to the relevance or the unfair prejudicial nature of the statement until after it was played for the jury. Because McGuire failed to timely and specifically object, we find no merit in this issue." *Id.* at 577 (¶15).

¶16.    Our ruling in *McGuire* is consistent with the Mississippi Supreme Court's holding in *Hales v State*, 933 So. 2d 962 (Miss. 2006). In that case, Hales failed to object to the photograph on any grounds prior to its admission. *Id.* at 966 (¶11). He objected only after the photograph had been entered and the prosecution had completed its direct examination of the testifying witness. *Id.* On appeal, the supreme court held:

> [T]his issue is barred from consideration because defense counsel failed to contemporaneously and timely object to the admission of the photograph. The prosecution presented the color photograph to defense counsel before admitting it into evidence without an objection. The photo was admitted without objection. . . .

*Id.* at (¶12). We reiterated this requirement for timely objection prior to the admission of evidence more recently in *Jackson v. State*, 299 So. 3d 823 (Miss. Ct. App. 2020). In that case, when the State offered a video transcript of his confession for admission into evidence, Jackson made no objection. *Id.* at 832 (¶21). On appeal, we cited *McGuire*, holding that "an objection must be made as soon as it appears the evidence is objectionable." *Id.* We held that Jackson had waived his argument and had not preserved the issue for appeal. *Id.*

¶17.    In this case, Willis did not object to the admissibility of the taped witness interview until after it was entered into evidence. He initially informed the court that he had no

objection, and the tape was entered into evidence. It is unclear from the record how much of the tape was played to the jury before Willis objected, but the record is clear that Willis had no objection until he heard the contents of the tape. Accordingly, we find that because Willis failed to timely object to the admission of the tape, he is barred from raising the issue of its admissibility on appeal.

### B. Admissibility of the Audiotape

¶18. Notwithstanding the procedural bar, we find no merit to Willis's argument that the circuit court erred in admitting the recording.

¶19. To be admissible, evidence must be authenticated pursuant to Rule 901 of the Mississippi Rules of Evidence, which provides in part:

> (a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> (b) Examples. The following are examples only--not a complete list--of evidence that satisfies the requirement:
>
> > (1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.
>
> . . . .

¶20. To authenticate evidence, the proponent need only make a prima facie showing of authenticity. *Ellis*, 315 So. 3d at 498 (¶28). "Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court." *Id*. (quoting *Garcia v. State*, 300 So. 3d 945, 974 (¶94) (Miss. 2020)).

¶21.    Rule 901(b)(6)(A) specifically deals with the evidence needed to authenticate a telephone conversation with an individual:

> (b) Examples. The following are examples only--not a complete list--of evidence that satisfies the requirement:
>
> . . . .
>
> > (6) For a telephone conversation, evidence that a call was made to the number assigned at the time to:
> >
> > > (A) a particular person, if circumstances, including self-identification show that the person answering was the one called[.]

In *Gatlin*, 724 So. 2d at 368 (¶40), the Mississippi Supreme Court cited Rule 901(b)(6) when it allowed testimony from Captain Gaillot of the Jefferson Parrish Sheriff's Department concerning a telephone conversation he had with the defendant Gatlin. *Id.* Gaillot testified that he had called a number, supposedly belonging to Gatlin, and the person who answered identified himself as Gatlin. *Id.* at (¶¶40-41). The supreme court held, "[T]elephone conversations are authenticated when the evidence shows that a call was made to a number assigned at the time by the telephone company to a particular person and self-identification shows that the person answering is the person who was called." *Id.* at (¶40).

¶22.    Similarly, in this case, the tape was authenticated by a witness, Denson. He testified that he called Ruff, who identified herself at the beginning and again at the end of their conversation. Denson testified that he recorded the conversation on a CD. Denson further testified that he had reviewed the CD and that it was a true and accurate recording of his conversation with Ruff. On the audiotape, Ruff spelled her name and gave her address. She

11

said that her address was next door to Jackson's home. She confirmed that the number Denson called was her phone number. Although Denson had not spoken to Ruff previously and was not asked to identify her voice, the information Ruff provided concerning her name and address and her ability to discuss the details of the events of the shooting clearly confirmed her identity. In addition, Ruff had confirmed in her testimony that she did have a telephone conversation with Denson. Accordingly, notwithstanding the procedural bar, we find that the audiotape was sufficiently authenticated and that the circuit court did not abuse its discretion in admitting the recorded conversation into evidence.

**Conclusion**

¶23. Because the record reflects that Willis did not timely object to the admission of the recorded telephone conversation with his witness, we find that this issue is procedurally barred on appeal. Notwithstanding the procedural bar, because the recorded conversation with the witness was properly authenticated, the circuit court did not abuse its discretion in admitting the evidence.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

12